NATHAN A. HUGHES v. THE STATE.

No. 2377. Decided March 5, 1902.

**1.—Charge—Presumption of Innocence.**

A charge that, "the defendant is presumed 'by the law' to be innocent until," etc., does not deprive him of the right to have the jury know that he was in fact, as well as in law, presumed to be innocent. There is no merit in such contention.

**2.—Same—As to Province of the Jury.**

Where the court charged the jury, "you are the exclusive judges of the weight of the evidence and of the credibility of the witness," it is suggested, it would be better to follow the verbiage of the statute.

**3.—Misconduct of Jury—Discussing a Former Verdict—New Trial.**

On a second trial of defendant for murder, where the jury, after agreeing that defendant was guilty of murder, but before agreeing upon and assessing his punishment, discussed the punishment assessed by the former verdict against defendant in the case, and determined that the same punishment should not be applied, because "it looked too much like the other jury;" Held, the misconduct, in discussing the former verdict at all, was such as to require the granting of a new trial; and the failure of the court to grant a new trial constituted reversible error. Following Lankster v. State, ante, page 298.

Appeal from the District Court of Denton. Tried below before Hon. D. E. Barrett.

Appeal from a conviction of murder in the second degree; penalty, twenty-one years imprisonment in the penitentiary.

Appellant was charged by the indictment with the murder of George Frompton, on the 12th day of June, 1899. There were five counts in the indictment as to the means used in committing the murder, viz: The first, that it was done by striking with a hand ax; second, with some hard instrument to the grand jurors unknown; third, by drowning him in water; fourth, by striking him with a hand ax and hard instrument and then drowning him; and fifth, by ways, instruments, weapons, and means to the grand jurors unknown.

On the 15th of June, 1899, the dead body of George Frompton was found in a waterhole by some parties who were fishing in Milam Creek. The body was under the water. A rope around the neck was tied down to the root of a tree, which was also under the water. When taken out of the water it was found that his hands and feet were also tied and a rock, weighing from forty to sixty pounds, was found tied to the end of a rope which was tied to his feet. There was a wound above one of his eyes about an inch long. The Gainesville and Denton public road crosses the creek a short distance below where the body was found. Upon the bank of this creek, at this crossing, was a place commonly used as a camping ground by parties traveling in vehicles. Frompton and defendant had left the city of Houston some months before in a hack drawn by two ponies, and containing their camping outfit and set of tools used in repairing stoves, the business they were engaged in. The hack and ponies, etc., belonged to Frompton, and defendant was perhaps to gain an interest in them as they prosecuted their work. They traveled and pursued their avocation along their route as opportunity offered. On the evening of the 12th of June, 1899, they encamped at this crossing on Milam Creek, and within about thirty yards of where Frompton's body was afterwards found. Defendant, with the hack and outfit, was seen at a number of places afterwards, going north. After Frompton's body was found, as above stated, it was identified as that of the man who was defendant's companion; and as soon as this was ascertained, the sheriff of the county commenced telegraphing for the arrest of defendant. He was arrested in the city of Sherman, in possession of the property of deceased, as above described. After being warned, he stated to the officers that he and deceased had camped on Milam Creek the Monday night before; that his partner had left him and gone to Houston. That he, defendant, had gone away from the camp to fulfill an engagement with a woman he had met that evening, and while he was gone the old man Frompton left. That he did not hunt for him. He said he had bought Frompton's interest in the hack and ponies, etc. Quite a number of articles that had belonged to Frompton were found among the effects in defendant's possession.

This is a very brief general statement of the essential facts shown by a most voluminous record.

*Owsley & Ragsdale* and *A. I. Hudson,* for appellant.—The court erred in the sixteenth paragraph of his charge by instructing the jury that the

defendant was presumed by law to be innocent, and thereby deprived the appellant of the benefit of having the jury know that he was in fact as well as in law presumed innocent until his guilt is established by legal evidence to the satisfaction of the jury beyond a reasonable doubt.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at twenty-one years confinement in the penitentiary.

In the view we take of this case, it is only necessary to pass upon a few of appellant's assignments of error. Appellant insists that the court erred, in the sixteenth paragraph of his charge, in charging the jury as follows: "The defendant is presumed by the law to be innocent until his guilt is established by legal evidence beyond a reasonable doubt, and if you have a reasonable doubt as to his guilt you will acquit him." His objections are that the same deprived him of the right to have the jury know that he was in fact, as well as in law, presumed to be innocent until his guilt was established by legal evidence to the satisfaction of the jury beyond a reasonable doubt. There is no merit in this contention. The law authorizing and requiring the court to charge this is a statute of this State, and is as binding upon the court as any other law passed by the Legislature.

Appellant complains of the seventeenth paragraph of the charge, which reads as follows: "You are the exclusive judges of the weight of the evidence and of the credibility of the witnesses." It is complained that the court erred in omitting this phrase from the charge, to wit, "and of the facts proved." We would suggest that it would be better to follow the verbiage of the statute.

Appellant contends that he has not had a fair and impartial trial, because the jury trying him during their deliberations discussed the verdict of the former jury that convicted him, and were thereby guilty of misconduct. This is the second trial of defendant, the former trial being reversed on appeal. Hughes v. State (Texas Crim. App.), 60 S. W. Rep., 563. When the matter complained of came on for hearing, N. P. Johnson, foreman of the jury, testified: After the jury had determined that appellant was guilty of murder in the second degree, they began to vote on and discuss the punishment to be assessed. Seven of the jurors voted to give him twenty-five years; three fifteen years; and two, thirty years. It was suggested that, as a majority favored twenty-five years, the penalty should be assessed at that. At this stage a juror (witness thinks it was Juror Witt, who favored a higher penalty) stated that defendant had been convicted before and given twenty-five years, and if this jury gave him the same punishment the people would say they were following the other jury. Johnson thereupon stated that, as he remembered it, the other jury had only given him twenty years.

This brought on a discussion of the penalty inflicted by the other jury, and most of the jury insisted that the other jury had given appellant twenty-five years. They seemed to agree that they should not give him the same penalty. Johnson then suggested that they give appellant the benefit of the time appellant had been in jail, and fix the penalty at twenty-three years. Those jurors who favored fifteen years would not consent to twenty-three, but they finally agreed on twenty-one years. Juror Witt testified that he thought there was something said about the verdict of the other jury. He thought he said something about it himself. Some of the jurors stated the term heretofore given was twenty and some twenty-five years; did not remember how many thought it was twenty-five. The juror Cogdell testified that he stated appellant had been given twenty-five years by the other jury, but thought he was the only man who spoke of it; that he thought one said it was twenty years, and some one said it was twenty-five. He thinks this last statement was after witness had said it was twenty-five years. Juror Brown stated that several jurors said, "Give him twenty-five years," when some one said it was like the other trial. One juryman said, "Don't do that; it looks too much like the other trial." Juror Madewell stated some one of the jurors said the other jury assessed the punishment at twenty-five years. Juror Green testified that the verdict of the other jury was referred to, some saying the penalty assessed was twenty years and some twenty-five years. Juror Cogdell stated that it would not do to give him twenty-five years; it looked too much like the other jury. In Lankster v. State, ante, page 298, we decided the exact question here under discussion. In that case one of the jurors mentioned the fact, in the presence of the jury, that appellant had been tried twice before, the first jury giving him twenty-five years, and the second fifteen years, in the penitentiary. Another juror disputed the number of years in the last verdict, stating it was only ten years. In the case at bar all of the jurors testified that the discussion of the former trial did not influence them in making up their verdict. We find the same statement by the jurors in the Lankster case. As stated in the Lankster case: "We do not believe, in a matter of this sort, we are authorized to speculate as to possible injury that may have accrued to appellant. The jury were guilty of misconduct in referring to the former convictions, and the bare fact that this misconduct was of a character calculated to injuriously affect him is enough. Under the facts here stated in the bill, the court should have promptly granted a new trial, and should then have set on foot an investigation, and have meted out to those jurors guilty of misconduct a proper punishment. As the matter is presented to us, the record shows a plain violation of our statute on the subject, which was made to secure a defendant a fair and impartial trial by jury, and no recourse is left us except to reverse the case, and send it back, that it may be tried under the rules of law by a fair and impartial jury." Mitchell v. State, 36 Texas Crim. Rep., 278; Terry v. State (Texas Crim. App.), 38 S. W. Rep., 986; Darter v. State, 39 Texas Crim. Rep., 47; Blocker v. State, 2 Texas Ct. Rep., 69.

The learned trial judge gave an able, fair, and impartial presentation of the law applicable to the facts in his charge to the jury; and there are no bills of exception that require a reversal; in other words, the record is errorless except the misconduct on the part of the jury that appellant complains of. This misconduct is so reprehensible and is so fraught with probable injury to the rights of appellant, that we can not say that it was not calculated to injure his rights. Instead of a fair and impartial judgment by the jury upon the facts and conclusion from those facts as to the punishment that the law authorized to be meted out to appellant, we have a verdict predicated probably upon the supposed action, in part at least, of a former jury. This is not a fair trial under the laws of this State, nor is it a deduction from the evidence. We can not permit such a verdict to stand.

Because of the misconduct of the jury in discussing the former verdict, the judgment is reversed and the cause remanded.

*Reversed and remanded.*