SAM HELVENSTON v. THE STATE.

No. 3828.   Decided June 6, 1908.

**1.—Murder—Evidence—Threats.**

Where upon trial for murder the testimony with reference to threats showed that such threats were not directed towards the deceased the same were inadmissible in evidence.

**2.—Same—Evidence—Criminal Intent.**

Where upon trial for murder the State introduced testimony which showed that defendant expressed himself as ready for trouble, there was no error; this showed a malignant disposition and embraced the deceased.

**3.—Same—Misconduct of Jury—Allusion to Former Trial.**

Where upon trial for murder the jury retired to consider their verdict and after many hours of deliberation, stood eight for acquittal and four for conviction, when the foreman stated in presence of the jury that he was present at a former trial of defendant wherein he was charged with carrying a pistol, and that although he was acquitted he was nevertheless guilty; that defendant was a man of bad reputation and needed taking down; that if the jury acquitted him the defendant would kill some one else, etc., the same was such misconduct as to constitute reversible error.

Appeal from the District Court of Rusk. Tried below before the Hon. W. C. Buford.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Moore & Moore, J. W. McDavid, S. J. Hendricks* and *N. B. Morris,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was indicted in the District Court of Rusk County, charged with the murder of one W. T. Hemby. On trial he was convicted of manslaughter and his punishment assessed at two years confinement in the State penitentiary. The evidence shows that on the 28th day of September, 1907, in the little town of Tatum, a misunderstanding arose between one Everett and Jim Tatum which resulted in a general row in which appellant was incidentally involved, although not the originator of the difficulty in any sense, and in which one Willis Menefee became the active champion of the station agent, Everett. This difficulty originated about 2 o'clock in the afternoon of the day named. The deceased was not present, had no part in it and in fact was not in town. The killing of Hemby by appellant occurred near a hotel in the town of Tatum about 8 o'clock that night. As is usually the case, there is some decided discrepancy in the testimony, but the facts seem to be that Hemby came to the hotel where appellant was and made some inquiry about the difficulty earlier on the same day out

of which grew a wordy altercation; that appellant had a gun at the hotel but did not have it with him when he first met and talked with deceased. The discussion between the parties became heated and appellant went to the hotel to get his gun and after he had got same, Hemby left the hotel, went off some distance and returned with a Winchester rifle which he had in his possession when shot. There is strong evidence tending to show that appellant acted in self-defense. The trial court recognized that this issue was in the case and submitted same in a charge not subject to serious objection. There are a number of questions arising on the appeal, but we deem it unnecessary to discuss but two of them. We think that the case must be reversed on at least two propositions.

1. Over appellant's objection the following testimony, substantially, was introduced: A witness by the name of Holtzclaw testified that on the afternoon of the killing and some three hours before the time it occurred, the appellant went to his, Holtzclaw's, store, called for cartridges and made threats to the effect that he had six shells; that four of them were cut and that when these shells were gone, he would have some of them (meaning that he would kill some of the crowd). By the witness McNaughton the State proved that appellant went to his store on the same afternoon and offered him $10 for his shotgun. It was proved by one King that on the same afternoon, he, King, saw appellant sitting on a box at the depot and heard him say that he had a gun and six shells and would just as soon be in trouble as out of trouble, and that if they wanted to shoot with him he could shoot as quick as they could. The witness Williams testified that on the same evening that Hemby was killed, but sometime prior thereto, he saw appellant at the store of Dr. Tatum with a gun and heard appellant say he had a gun for Willis Menefee, and if he would come out of his store or stick his head out he would shoot it off. This testimony was objected to on the ground that it appeared from the evidence that a difficulty had just occurred between Everett, Tatum and Menefee in which the appellant participated, and also that it had been shown to the court that a gun was used in said difficulty but that the appellant did not use the gun, and that it appeared that Hemby, the deceased, was not in said difficulty, was not in town and that nothing occurred between him and appellant. Therefore, the appellant objected to said testimony because it so appeared and because same was hearsay and was immaterial, and especially because it referred to and was part of a different difficulty from that in which Hemby was killed and because it was an indirect way of proving the appellant's bad reputation, and because such testimony tended to show another and different difficulty from that in which the killing occurred and was very prejudicial to the appellant; and further because it did not and could not have any reference to Hemby. These objections were overruled and the testimony substantially as above set out was admitted. We think, at least, a part of this testimony was inadmissible. It is obvious that so much of the testi-

mony as contained a threat to shoot Menefee if he would come out of the store or stick his head out could have thrown no light whatever on the killing of Hemby who was in no way connected with said difficulty, was not in town at the time and who was, as the evidence all discloses, entirely friendly to appellant.   There seems to be two lines of decisions in this State, and perhaps the court has not always been very clear in stating the rule.   We understand the rule, however, well settled that wherever threats to do violent injury are offered, ordinarily they are never to be permitted in evidence, unless it is reasonably apparent that they were directed towards the person with whose death thereafter the party making such threats is sought to be connected.   This statement of the rule, we think, is sustained by the decision in the case of Hall v. State, 42 Texas Crim. Rep., 444; 64 S. W. Rep., 248, and by many other decisions in this State.   In the Hall case it is said:   "The witness, Joe Klepper, while testifying in behalf of the State, was permitted to state: 'When crossing the bridge on Sloan's creek, near the residence of defendant's father, and while defendant was sitting in his buggy in the road in front of his father's residence, talking with his mother, on the day the shooting occurred, he heard defendant say that he (defendant) was going to shoot somebody, or that if they fooled with him, that he was going down there and kill the whole outfit.'   Various objections were urged to this testimony.   We believe the threats were too general and indefinite; and it does not sufficiently, if in fact it does at all, connect the threats with either his wife, or any of the parties at the residence where she was then residing.   In Gaines case, 53 S. W. Rep., 623, this was said:   "We laid down the correct doctrine on this subject, to wit: that, before testimony of this character could be shown that such threats or statements were directed towards the person slain, or had reference to such person and, if this does not appear, such threats or statements, are inadmissible."   See, also, Gaines v. State, 38 Texas Crim. Rep., 202; 42 S. W. Rep., 385; Strange v. State, 38 Texas Crim. Rep., 280; 42 S. W. Rep., 551; Godwin v. State, 38 Texas Crim. Rep., 466; 43 S. W. Rep., 336; Holley v. State, 39 Texas Crim. Rep., 301; 46 S. W. Rep., 39.   To the same effect also see McMahon v. State, 46 Texas Crim. Rep., 540; 81 S. W. Rep., 296; Holley v. State, 46 S. W. Rep., 41 (on rehearing), and Garrett v. State, 106 S. W. Rep., 389.   Now, in the case before us, it not only would not appear that some of these threats were directed towards the deceased, but it clearly and affirmatively appeared that they were not so directed and that appellant in making the statements did not, and in the nature of things could not have had the deceased in mind.   We think, however, that some of this testimony was admissible.   For instance, that portion of same in which appellant expressed himself as ready for trouble, would be admissible with a view of showing in connection with his act of preparation, reckless disregard of the safety of anyone and everyone who might antagonize him and as showing a malignant disposition of all persons or at least such class of persons, as might or would embrace the de-

ceased. In the case of Godwin v. State, 38 Texas Crim. Rep., 466, the court say: "If a person declares that he intends to go upon the street, and kill some person, and straightway goes upon the street, armed with a weapon, and slays an individual, evidence of the previous declaration made would be admissible, both as a part of the res gestæ and as showing a malignant disposition towards all persons, which would embrace the person slain." Again, in the case of Taylor v. State, 44 Texas Crim. Rep., 547; 72 S. W. Rep., 396, the statement considered was as follows: "I am going to do some devilment and get my name in the paper." The court held this was admissible because it showed a malignant disposition and suggested that the party was bent on mischief. Hardy v. State, 31 Texas Crim. Rep., 289; Mathis v. State, 34 Texas Crim. Rep., 39; Hall v. State, 88 S. W. Rep., 244.

2. We think the seventh ground of appellant's motion for a new trial imputing misconduct to the jury should have been sustained. This ground of the motion, in substance, charges that while the jury were deliberating, and before a verdict was reached, one Freeman, who was on the jury, told the rest of the jurors that he had just recognized this defendant as the same young man who was tried a short while ago for a misdemeanor in this court house and acquitted, although in fact he was guilty; that he was a bad fellow and it would not do to acquit him. It is averred that this misconduct was vicious, and was the introduction of testimony against the defendant in his absence, and to his prejudice, and on this account he was entitled to a new trial. This ground of the motion was supported with the affidavits of seven members of the jury trying appellant. The affidavit of one of the jurors, C. C. Gage, was to the effect that after the jury had reported three times to the court that they could not agree and before they had agreed and just after they had returned to the juryroom after said report, that the juror Freeman stated to the jurors Milstead, Bowles, Brown, Cooper and Wallace, and he does not know how many other jurors heard said statement, that he had just recognized the defendant as the person who had recently been tried in the county court for carrying a pistol; that he was a juror in the county court at the time; that defendant waived a jury and was tried by the court, Hon. S. J. Hendricks, one of the defendant's counsel in the present case; that he had heard all the evidence and was convinced from same that defendant was guilty of the unlawful carrying a pistol but that said Hendricks was partial to defendant and acquitted him; that the evidence in said pistol case was about as follows: Defendant was at a party and was out at the gate when a pistol fired, and the man who gave the party came to Sam (appellant) and asked who fired the pistol, and the defendant said that was not me but was the person who just went off up the road; the man of the house went back in the house and soon a pistol fired twice and he returned to Sam (appellant), and asked again who fired the pistol and Sam (appellant) said, "It was not me but here you take my overcoat, my pistol is in it and do not let any person have it until I call for it." Said Freeman

further said that the defendant was a man of bad reputation and needed something to take him down, and that if he was not convicted that he would go back down there and kill some one else. Said affiant further says that at the time said Freeman made said statement about the defendant that the jury stood eight for acquittal and four for conviction and up to said time affiant was sure that defendant would be acquitted by the jury, but after this statement affiant cannot say whether said statement influenced him or not, but that he does know that he now believes that defendant should have been acquitted. Some other affidavits were attached to said motion not quite so specific or so much in detail, but to the same purport. On hearing the motion the testimony of a number of the jurors were taken. This testimony briefly summarized is as follows: A. A. Bowles testified that he wanted to correct his affidavit attached to appellant's motion so that it would show that he tried the case on the evidence and the charge of the court, and was not influenced by the statement made by the juror Freeman about the defendant being a bad boy, and having been tried in the county court for carrying a pistol; that he did not hear any of the jurors mention the fact that the defendant did not testify. The juror Milstead testified that he tried the case according to the law and the evidence, and was not influenced by the statement made by the juror Freeman about the defendant's bad reputation, and having been tried for carrying a pistol in the county court; that he did not hear anyone mention the fact that defendant did not testify; that his best recollection is that Freeman said if defendant was not convicted that he might go back down there and kill some one else. L. A. Harmon testified that he was one of the jurors who tried the defendant and that he tried the case according to the law and the evidence; that is, he thought from the law and the evidence that the defendant was not guilty of anything, and should have been acquitted, but agreed on two years as a compromise in order to make a verdict. He further says, "I cannot say whether the statement made by the juror Freeman influenced me or not. I did not hear any of the jurors at any time mention the fact that the defendant did not testify." It was proved by another juror, Oscar Goodlett, that he tried the case according to the law and the evidence; that he thought the defendant was entitled to a verdict of not guilty, but agreed to a conviction for two years in order to compromise and agree on a verdict; that he did not hear the juror Freeman make any statement about the defendant having been tried in the county court for carrying a pistol and having a bad reputation, nor did he hear any of the jurors at any time mention the fact that the defendant did not testify. The testimony of another juror, A. W. Wallace, is as follows: "I heard some one of the jurors mention the fact that the defendant did not testify, but do not remember whether it was before or after we had made a verdict; I cannot say whether the statement made by the juror Freeman about the defendant having been tried for carrying a pistol and having a bad reputation, influenced me or not. When we

were trying to get some of the jurors to come to us and acquit the defendant he began this statement, and I felt he was not treating the defendant right and I walked away to a different part of the room and did not hear all that was said. I thought that the defendant should have been acquitted of any offense, and so maintained that position and held out for an acquittal until the court had sent for us the fourth time, and it was then past eleven o'clock Saturday night and I understood from what the court said to us it was our duty to make some concessions and reach a verdict; that the case had already cost the county $400. We afterwards made a verdict, but I was not satisfied with the verdict and am not satisfied with it now, and I cannot say that I made my verdict on the law and the evidence. The court did not intimate to us whether he thought the verdict should be for conviction or acquittal." Charlie Gage, another juror, testified that he did not hear any juror at any time mention the fact that defendant did not testify and that he could not say whether the statement made by the juror Freeman influenced him or not, but does know that at that time the jury had reported several times to the court that they could not agree and the court urged them to agree on a verdict and that they soon made a verdict thereafter. He says, further, "I was not governed by the evidence in making my verdict, but made a concession on the suggestion of the court that it was our duty to make a verdict; that it had cost $400 to try the case." He states, however, that the court did not tell the jury nor intimate whether the verdict should be guilty or not guilty. Further he states, "I believed then and believe now that the defendant was not guilty of any offense under the evidence, and though I came down with the other jurors and agreed for the verdict to be reported, it was not my verdict. I was not satisfied then and am not satisfied now about it." Another juror, C. P. Brown, testified that the statements made by the juror Freeman did not influence him, but adds further, "I do know that we stood eight for acquittal at the time the statement was made. I cannot say that I made my verdict on the law and the evidence." That this testimony evidences and chronicles such misconduct as ought, with any free people or in any enlightened community governed by law, to set aside a verdict, we do not for one moment doubt or question. We undertook in the case of Smith v. State, 51 Texas Crim. Rep., 137; 106 S. W. Rep., 1161, to reconcile the opinions of this court and lay down the correct rule which we then, as now, believed to be both a just and fair as well as a correct expression of the true intent of our lawmakers in respect to misconduct of the jury. In that case it is said, "Article 823 of the Code of Criminal Procedure of 1895 is as follows: The effect of a new trial is to place the cause in the same position in which it was before any trial had taken place. The former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument," and includes any discussion of a former conviction by the jury in the juryroom. Horn v. State, 50 Texas Crim. Rep., 404; 97 S. W. Rep., 822; 17 Texas Ct. Rep., 271. It has also

been held that a mere casual reference to a former trial or incidental remark will not necessarily be reversible error. See Gaines v. State, 77 S. W. Rep., 10; 8 Texas Ct. Rep., 616. The question has been before this court in many cases and every case seems to have been disposed of somewhat in accordance with the particular facts. We think the true rule is that where, as in this case, the testimony supports the verdict that a verdict ought not to be set aside for every incidental and casual mention of a former trial or a former conviction, and that in no case should it be set aside in a case tried according to law where the conviction is supported by the testimony unless the court may say in the light of all the circumstances that such reference and discussion did or might have prejudiced the appellant's case. It is possible that there is some language in some of the decisions, not wholly in accord with the views here expressed, but on full consideration this is believed to be the correct rule and under this rule we believe appellant is without just ground of complaint." Our statute also provides that after the conclusion of the argument the jury shall not receive additional testimony. It will be perceived by reference to the statements of the jurors, above quoted, that the jury had reported four times their inability to agree and that they had been more than once urged by the court to agree upon a verdict if possible. As presented by the record there was no such coercion on the part of the court which, within itself, would justify a reversal. On the contrary, his actions seem to have been well within the limits of propriety, nor do we believe that his conduct in this respect is the subject-matter of criticism, but it does have some slight bearing on the question of misconduct. So that we have this kind of a case: A case in which the issue of self-defense is strongly supported in the testimony. The jury stands, after many hours of deliberation, eight for acquittal and four for conviction. At this juncture the juror Freeman volunteers the information that he just then, for the first time, recalls being present in that same courthouse in the trial of a case for carrying a pistol in which the appellant figured as the defendant; that he was then tried by Judge Hendricks, now his counsel; that he was then guilty but had been favored and improperly acquitted; that he was a man of bad reputation; that he needed taking down; that if they acquitted him he would go down town and kill some one else. Can anything be imagined, within the bounds of reason, more seriously calculated to absolutely destroy an accused's defense and cut him off from any hope of a fair consideration, or fair determination, of the merits of his case? We think, as presented, that the learned court below should have set aside the judgment of conviction and accorded the appellant another trial. If it lies within the power of juries, after all the testimony has been heard and the last words spoken, to prejudice and destroy defenses, or to break down the force of the exculpatory evidence, by the recital of information within their knowledge, the effect of which is to inflame the passions and

prejudice the minds of the jurors, then, indeed, is a trial by a jury a vain and foolish thing.

3. The action of the court in many other matters raised on appeal, we think is correct. The charge of the court is a clear and lucid presentation of the issues and sufficiently, as we believe, presented all matters arising under the evidence. For the errors above set out, the judgment of conviction is set aside and the cause remanded for a trial in accordance with the laws of the land.

*Reversed and remanded.*

Brooks, Judge, absent.