## NOAH MILLER v. THE STATE.

### No. 2907. Decided November 23, 1904.

**1.—Murder—Jury and Jury Law—Absent Jurors Peremptorily Excused.**

Where upon a trial for murder, the return of the sheriff showed that all the jurors named in the special venire had been summoned; that fourteen had been excused by agreement; that twenty-eight were present, and eight absent; that appellant requested an attachment as each of the absent jurors was called, and a postponement of the call, until the absent juror could be present; that the court however proceeded with the call, until the entire list was exhausted; that then appellant asked that the proceedings be stopped, until the eight absent jurors could be brought into court; whereupon the State peremptorily challenged

them.   Held not error, even where the death penalty is inflicted.   Following Dodd v. State, 44 Texas Crim. Rep. 480.

### 2.—Evidence—Irrelevant Matter Not Subject of Impeachment.

Where appellant testified in his own behalf, and at times, while so testifying had apparent difficulty in breathing, reclining on a cot during trial, the district attorney asked him in regard to this difficulty in breathing, and his reply was, that " he could not help it," it was reversible error to attempt to show that the apparent difficulty in defendant's breathing was feigned; especially where the fact that he had attempted to cut his throat with a razor was brought out on cross-examination, and the matter not being relevant, should have been concluded when appellant stated he could not help it.

### 3.—Argument of Counsel—Legitimate Discussion.

Where the bill of exceptions did not show in what connection the State's attorney called defendant "a liar," and indulging the presumption that it was in discussing defendant's testimony, it cannot be held that he transgressed the bounds of legitimate argument in using this remark.

Appeal from the District Court of Cherokee.   Tried below before Hon. Tom C. Davis.

Appeal from a conviction of murder in the first degree; penalty, death.

The testimony for the State shows substantially that on the evening of the killing that the deceased (who was defendant's wife) and her mother agreed they would go to a party that night at St. Paul's church, and that they would meet at a negro woman's house named Polly, who lived between Alto and the church.   The mother of deceased testified that she went there and that shortly after her arrival, her daughter, John Anderson, Amelia McElvie and Roxie came along; the defendant also appeared, and all went to the church.   Defendant tried to talk with his wife, but she refused to talk to him.   After church, this same party started home together.   When they had gone some distance, defendant said to deceased: "Lillie, do you know I paid for those shoes you are wearing?" She replied: "Yes, Noah, and you can have them if you want them." The defendant then threw his arms around her and cut her throat with a razor.

This witness also testified that deceased had ceased to live with defendant, because she was afraid he would kill her; that deceased told her mother that defendant had said that whenever his wife quit him, he would kill her.   That deceased was not guilty of improper intercourse with other men and that witness had frequently asked her to return to her husband.   The manner of the killing was corroborated by other eyewitnesses.

The defendant testified that he had tried his best to get his wife to return to him; that he had good reason to suspect that she had improper intercourse with other men; that he still loved her fondly, and on the night of the homicide begged her to go home with him, whereupon she struck him and cursed him; that this so enraged him that he did not know what he did; that when he realized that he had killed her, he did not care to live and attempted to cut his own throat with the razor, etc.

There was evidence that the defendant was very jealous of his wife,

and that he had had difficulties with other men whom he suspected were seducing his wife.

*W. H. Shook* and *E. B. Ward,* for appellant.—The physical condition of the defendant at the time of the trial was not material to any issue in the case, and evidence on behalf of the State that defendant was feigning debility was inadmissible and was so prejudicial to defendant, as to require a reversal of this cause and if defendant's condition had been material, the same would not be shown by acts of defendant. Dimry v. State, 41 Texas Crim. Rep., 272; Drake v. State, 29 Texas Crim. App., 265; Fulcher v. State, 28 Texas Crim. App., 465; Puryear v. State, 28 Texas Crim. App., 73; Nolen v. State, 14 Texas Crim. App., 474; Carter v. State, 23 Texas Crim. App., 508; McWilliams v. State, 44 Texas Crim. Rep., 115; Parker v. State, 57 S. W. Rep., 668; Kirby v. State, 23 Texas Crim. App., 13 (quoting People v. Willett, 92 N. Y., 29); Thompson v. State, 38 Texas Crim. Rep., 335; Greenleaf's Ev. 14 Ed. vol. 1, sec. 448 and 449 and notes.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted for the murder of his wife, and given the death penalty.

There are about eighteen bills of exception in the record, most of which pertain to the organization of the jury. The bills, as qualified by the judge in regard to this matter, show that a special venire was ordered. All the jurors, by the sheriff's return, had been summoned. Fourteen of this number had been excused by agreement of parties. Of those remaining, twenty-eight were present, and eight absent. As the name of each of the absent jurors was reached on the call of the list, appellant requested an attachment, and further, that the empanelment of the jury cease until the absent juror could be present; but the court proceeded with the call until the entire list was exhausted. When this stage of the proceedings was reached, appellant' counsel requested that the proceedings be stopped, until the eight absent jurors could be brought into court. When this request was made, the district attorney peremptorily challenged the eight absent veniremen. This was sustained by the court, and the eight challenges charged to the State. It would seem, that two questions are presented by these bills. First, should the court have stopped the proceedings, until the jurors could have been brought in. Second, was the court correct in sustaining the State in its peremptory challenge to all the absent jurors. Without going into the details in regard to the absent jurors, as to their distance from the courthouse and the probability of securing their presence within reasonable time, or as to how long it may have delayed the proceedings in securing a jury, we would remark that there is no injury shown on this phase. The court, under such circumstances should issue attachment for absent jurors, but can proceed with the call of the venire, if waiting for absent jurors

should produce unnecessary delay in the trial. The statute expressly so provides. This phase of the question might be rested here as correct. But, to the other question: If the court was right in sustaining the State's challenges to the absent jurors, it could not have availed defendant to have them present or to issue attachments for them. This question was before the court in Dodd's case, 44 Texas Crim. Rep., 480, and similar action in that case by the trial judge to the action of the judge in this case was held not erroneous. The only difference being, that this is a capital case, in which a special venire was used, while Dodd's case was a non-capital felony. Here, there were eight jurors peremptorily challenged while absent, while in Dodd's case, only one juror was so challenged. If the jurors had been present, and the State had challenged them peremptorily, it would have prevented appellant using any of them, and being challenged peremptorily, it was useless to send for them or to consume the time of the court waiting for them to be brought in, when defendant could not have possibly used them. The State had the legal right to excuse fifteen jurors peremptorily. At the time the eight were challenged, the district attorney had only used one of his peremptory challenges. We see no reversible error in this matter. Osborne's case, 23 Texas Crim. App., 431, does not apply here.

Appellant testified in his own behalf, and at times, while so testifying, had apparent difficulty in breathing and reclined on a cot during the trial. The district attorney asked him in regard to this difficulty in breathing, and his reply was, that "he could not help it." In this connection, Dr. McCord was placed on the witness stand by the State, and stated in substance, that the heavy breathing of appellant, or apparent difficulty in breathing, was feigned, and that it was not necessary for him to lie or recline upon a cot during the trial. The jailer was also permitted to testify that appellant had been incarcerated in jail since July, 1903, and when asleep, or unaware any one was around watching him, he breathed naturally. It is shown by the record, that he cut his throat with a razor almost immediately after having cut his wife's throat. This matter was brought out by the State on cross-examination of the appellant. When appellant stated he could not help breathing heavily, the matter should have been concluded. It was not a relevant matter, and therefore not the subject of impeachment. It tended in no way to shed light on the subject under.investigation, to wit: the homicide. If he was simulating, the heavy breathing did not tend to prove or elucidate any fact connected with the homicide. It could not form the basis of impeachment, as shown in this record. It could not have been proved as original evidence. The reply of appellant concluded the investigation of the subject, and the testimony was of a prejudicial character.

Bill of exceptions was reserved to a remark of the district attorney calling defendant "a liar." This occurred during the argument. In what connection it occurred, or how, or why, is not stated; nor was any of the circumstances stated in connection with this remark. Indulging

the presumption, that the district attorney was discussing appellant's testimony, we do not see that he transgressed the bounds of argument, in using the remark. There was no error, therefore, in the court refusing special requested instruction to disregard said remark.

The charge of manslaughter is criticised and exception reserved to the failure to give a special instruction. If the issue of manslaughter was called for, we are of opinion the charge given is correct and sufficient.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*