# DECEMBER, 1910.

## EUGENE WILLIAMS V. THE STATE.

### No. 661.   Decided November 16, 1910.

Rehearing Denied December 7, 1910.

**1.—Murder—Charge of Court—Alibi.**

Where, upon trial of murder, the evidence barely suggested the issue of alibi and the court not only charged fully in regard to the law of circumstantial evidence, but submitted requested charges thereon, there was no reversible error.

**2.—Same—Charge of Court—Circumstantial Evidence—Requested Charges—
Weight of Evidence.**

Where, upon trial of murder, the court fully instructed upon circumstantial evidence, submitting special requested charges thereon, there was no error in refusing special charges which were on the weight of the evidence.

**3.—Same—Evidence—Circumstantial Evidence.**

Upon trial of murder there was no error in admitting testimony that the hair found on an axe which was supposed to have been used in the homicide was negro hair.

**4.—Same—Evidence—Blood Stains.**

Upon trial of murder where it was shown that the axe which was supposed to have been used in the homicide had blood stains upon it when it was found, there was no error in admitting this circumstantial evidence.

**5.—Same—Evidence—Bloody Axe.**

Upon trial of murder, where testimony was introduced with reference to blood stains found upon an axe which was supposed to have been used in the homicide, there was no error in admitting testimony showing that an attempt had been made to wipe the blood from the axe.

**6.—Same—Jury and Jury Law—Race Discrimination.**

Where upon trial of murder the defendant objected to certain jurors on account of race prejudice, but did not reserve his bill of exceptions as to these jurors but applied this point to another juror against whom he had not protested on this ground, and the record showed on appeal that no objectionable juror was forced upon him, there was no error.

**7.—Same—Evidence—Remarks by Judge.**

Where, upon appeal from a conviction of murder, it appeared from the record that the statement by the judge to which objection was made in the trial court was not a comment on the weight of the evidence with reference to negro hair found on the axe supposed to have been used in the homicide, there was no error.

**8.—Same—Evidence—Money Found on Defendant.**

Where, upon trial of murder, there was evidence of money found on the defendant which belonged to the deceased and was sufficiently identified and connected up that it had belonged to deceased, there was no error.

**9.—Same—Evidence—Tracks.**

Upon trial of murder there was no error in admitting testimony of tracks

found on the ground near the homicide which corresponded with the size of the tracks made by the defendant.

#### 10.—Same—Jury and Jury Law—Special Venire.

Where, upon trial of murder, the defendant moved to quash the special venire on account of the service and because the special veniremen were not present, and the record on appeal showed that the absent veniremen were excused by permission of counsel and no attachments were requested to bring in the absent veniremen, there was no error.

#### 11.—Same—Evidence—Clothing of Defendant.

Upon trial of murder there was no error in the introduction in evidence of the overalls worn by the defendant at the time of the homicide and which had blood stains upon them, etc.

#### 12.—Same—Jury and Jury Law—Special Venire—Talesmen.

On trial of murder after the special venire had been exhausted, where the defendant moved to postpone the case and to select another venire, there was no error in the court's action in instructing the sheriff to summon talesmen; nothing being shown in bills of exception that there was any prejudice on the part of the officer in making his summons. Following Mays v. State, 50 Texas Crim. Rep., 165, and other cases.

#### 13.—Same—Sufficiency of the Evidence.

Where, upon trial of murder, the evidence sustained a conviction of murder in the first degree, the same will not be disturbed on appeal.

Appeal from the District Court of Falls. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*J. Holmes Anderson* and *Nat Llewellyn,* for appellant.—On question of allowing witnesses to testify as to appearance of blood spots on the axe: 5 Ency. Ev., p. 520.

On question of remarks by the judge: Crook v. State, 27 Texas Crim. App., 198; Kelly v. State, 33 Texas Crim. Rep., 31; Malcek v. State, id., 21; Moncallo v. State, 12 Texas Crim. App., 171; Conn v. State, 11 Texas Crim. App., 390; Simmons v. State, 55 Texas Crim. Rep., 441, 117 S. W. Rep., 141.

On question of the insufficiency of the evidence: Sutton v. State, 41 Texas, 513; Lunsford v. State, 1 Texas Crim. App., 448; Ferrell v. State, 2 Texas Crim. App., 399; Lowe v. State, 77 S. W. Rep., 220; State v. Slack, 30 Texas, 355.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted for the murder of George Willie McGill, alias Ab McGill, and awarded a life sentence in the penitentiary.

The State's case, in brief, is that appellant and his wife had been hired by W. C. Kirkpatrick as cotton pickers. They occupied and slept in a room of a house occupied by another negro named Burton,

Appellant was a poor man and had nothing in the way of finances when Kirkpatrick employed him. Kirkpatrick had to supply him with bedding and necessary matters before appellant would agree to work for him. Nearly all of the money arising from the cotton picked by appellant and his wife was used in paying for the bedding and such things as appellant needed. The deceased McGill was also in the employ of Kirkpatrick, and had been for some time. He occupied a different house from that occupied by appellant and his wife and Burton. McGill's death was brought about by someone striking him on the head with an axe and inflicting a wound upon his neck with some sharp instrument. The case is one of circumstantial evidence.

1. The first bill of exceptions suggests error on the part of the court in failing to submit the issue of alibi. This proposition is based upon an alleged statement of the defendant that he told the witness Burton that he was off down the road about a mile and a half or two miles from said place near a house of a man named Richardson, on the road to Chilton. An examination of the record, we think, would barely suggest the issue of alibi, even on this statement as contained in the bill. The court not only charged fully in regard to the law of circumstantial evidence, but gave several requested instructions in almost every conceivable form, applying the law of circumstantial evidence to particular facts and combination of facts. Appellant presented this question in many ways. The testimony is so cogently overwhelming, in our judgment, that appellant was not at Richardson's, but was immediately at the place where the homicide occurred, that it was unnecessary, in view of the charges given, for the court to have charged on alibi, and that there was no error in failing to do so. It may be stated, in this connection, that appellant's statement as given does not show at the time of the killing that he was at Richardson's. The statement is general that he was there that night. There was no charge requested by appellant. The testimony is so indefinite in regard to his absence at the time of the homicide that the error, if any was committed by the court in this respect, is not of sufficient importance to require us to reverse the judgment for that reason.

2. The court refused two special requested instructions with reference to the law of circumstantial evidence. This phase of the law was not only given by the court, but several special requested instructions by appellant were given. These submit that issue in every conceivable form, it occurs to us, that could possibly be applicable to the case; and besides, the refused charges asked were on the weight of evidence. The first one, for instance, is as follows: "The court further instructs the jury that when upon a charge of murder the evidence is wholly circumstantial, as in the case here, the absence of all evidence of an inducing cause or motive to commit the offense charged affords of itself a strong presumption of innocence." The

second charge requested, which was refused, is as follows: "The court instructs the jury that if, upon the whole evidence in the case, there is any reasonable hypothesis consistent with the innocence of the accused, they must find him not guilty. The court instructs the jury that the failure of the evidence to disclose any other criminal agent than the accused, is not a circumstance which may be considered by the jury in determining whether or not he was guilty of the crime wherewith he is charged," etc. The court had given, as before stated, charges on circumstantial evidence favorable to the defendant, so much so that some of them might be considered as being on the weight of evidence. The quoted charges above, it occurs to us, would be subject to the criticism that it was a charge upon the weight of evidence. If not on the weight of the evidence, inasmuch as the court had given several instructions requested by appellant and had himself charged fully upon that phase of the law, there was no error in refusing these charges.

3. There are several bills of exception reserved to the ruling of the court permitting evidence to the effect that the hair found on the axe, which was supposed to have been used in the homicide, was negro hair. Without going into these bills of exception and collating the testimony upon this issue, we are of opinion there was no error in this. The witnesses swear positively that it was negro hair. They knew negro hair and knew that it was negro hair. They show a thorough familiarity with such hair as they called "negro hair," such as was found upon the axe, and it was uncontroverted that this character of hair was on the axe. This testimony was clearly admissible.

4. There are bills of exception reserved to the admission of the testimony in regard to the appearance of the axe as to blood stains upon it when it was found. By way of illustration, it is sufficient, perhaps, to call attention to the testimony of only one witness. This witness was Kirkpatrick. He states the morning after the killing he saw an axe; that there was a large crowd present who were examining it. Blackburn found it under the negro room; it was bloody for about six or seven inches up the handle, and it had negro hair, blood and brains on it. "I saw the axe; it was bloody for about six or seven inches up the handle and it had negro hair, blood and brains on it; it was negro hair on that axe, and brains; there was dirt on the axe; it looked like he had tried to get the blood off." Several objections were urged to this testimony. The court qualifies the bill by stating: "The witness testified that Blackburn found the axe. Blackburn testified that he found the axe, and there was no controversy on that point, and the witness Blackburn testified that he did not change the axe in any way, but as soon as he found it he took it to where the crowd was (where Kirkpatrick placed himself) in the same condition as when he found it, and described the axe when he found it just as Kirkpatrick did. "The witness stated that

the hair on the axe was negro hair and was kinky hair." The objection to this was that witness was not present when the axe was found, and it was hearsay, and there was no evidence to show that the axe had not been handled by other people, and its condition changed after having been found, and that the statement of the witness that there was brains on the axe was a conclusion, he not having been qualified as an expert, and that his statement that it was negro hair was an expression of his opinion without having qualified as an expert. These are but grounds of exception, and are not verified in any way by the court as being true, and are not shown in the bill to be facts, nor are they stated as facts, but simply as grounds of objection. None of these objections are well taken, and as shown in bill of exceptions, as qualified by the judge, the witness could testify to the matters stated, and in looking at the evidence we find that the axe was fully identified as the axe found by Blackburn and as stated by the judge. The witness could state, under the circumstances detailed, that the hair on the axe was negro hair. He could also state the condition of the axe and that there was blood and brains on it.

5. There is also evidence introduced showing that an attempt had been made to wipe the blood from the axe. This is here stated generally as the substance of statements of the witnesses, but there was quite a lot of testimony introduced on this line. This, we think, was clearly admissible. The witnesses saw the axe, and it indicated that it had been wiped with a view of getting the blood from it. It did not take an expert to testify in regard to this matter. It was the appearance of the axe, and it is, under our authorities, not to be considered as expert testimony, but rather as a shorthand rendering of the facts. It is just one of those things that is almost impossible to describe by giving the facts other than as was stated. These witnesses testified in substance that it looked like the axe had been wiped on something after it had been used with a view of wiping the blood from it. This testimony was admissible.

6. Bill of exceptions No. 6 recites that when the jurors Moore and Schmidecamp and Chas. Hinkle were on the stand being examined on their voir dire, each stated they were prejudiced against a negro and could not give him the same fair and impartial trial they could a white man under the same facts and circumstances. On this statement of the jurors they were by the defendant challenged for cause, and on further examination by the county attorney they stated while they were prejudiced against negroes, that in their opinion when there was a negro being tried for the murder of another negro they believed they could give him a fair and impartial trial. On these statements of the jurors the appellant challenged each of them for cause, but the challenges were overruled, and appellant excepted on the ground that the jurors were prejudiced against negroes, defendant being a negro. And that afterwards, when de-

fendant had exercised his fifteen challenges, a juror by the name of John Peters, who was virulent in his hatred of negroes, and as counsel knew, would be a bad juror on account of his prejudice, was forced upon defendant for want of challenges, and that afterwards when the case was submitted to the jury this juror did contend for a conviction of murder in the first degree with the death penalty, he being the only juror seriously contending for this punishment. This bill is approved with the qualification: "That the record only shows that C. O. Moore and Ben Schmidecamp were so challenged, and that those two jurors said they could not give the negro as fair a trial as if he, a negro, had killed a white man, but that they could give the defendant, a negro, as fair and impartial trial for killing another negro as they could a white man for killing a white man under the same circumstances. There was no protest by counsel at taking John Peters as a juror when his name was reached, and no motion made to stand him aside for any reason and no challenge for cause was made as to said Peters, who qualified on voir dire. No testimony adduced that he was prejudiced against negroes nor against defendant and he testified that he was not. No showing was made on motion for new trial that the juror had acted improperly in considering the case and no evidence was adduced as to how he stood on the jury, whether for conviction, acquittal, life imprisonment or death penalty. And there was no showing that defendant had been injured in any way by said juror." As this bill is approved it was accepted by appellant. It is not shown that appellant had an objectionable juror forced upon him. There was no objection urged to Peters. The court qualifying the bill excludes the idea that appellant sought to get rid of him. We would not be justified in reversing on recitations of this bill of exceptions.

7. Another bill of exceptions recites that while Martin was on the stand testifying, the State offered the following facts: That witness examined the axe and found on it negro hair. Objection was urged that this was stating the opinion of the witness, and in this the court remarked: "I do not know whether it takes an expert to tell about negro hair; I think that any man would know negro hair." Objection was urged, first, that this was an opinion of the witness Martin, and, second, that the court believed anybody could tell the difference between negro hair and any other substance or material, and showed them that the court believed that there was no probability of the witness being mistaken as to the substance on said axe. And again, that the court should rule on the evidence and not comment thereon. The court qualifies this bill by copying from the stenographer's report, as follows: "State's counsel: Can you tell the difference between negro hair and white folk's hair? Witness: Yes, sir. State's counsel: I will ask you what kind of hair was on the pole of the axe? Defendant's counsel: We make the objection that it is an opinion. The court: I do not know whether it takes

an expert to tell about hair. Defendant's counsel: We make the objection that he has not qualified as an expert on negro hair. State's counsel: Can you tell the difference in straight hair and kinky hair? Witness: Yes, sir; it was kinky." The court further qualifies the bill by stating that "The record fails to disclose any exception whatever by the defendant as to the remarks of the court and the above is a stenographic memorandum prepared for the purpose of reserving exceptions." The court further states: "The witness further testified as to his knowledge of negro hair as follows: 'There was blood on the pole of the axe, and negro hair on it. There was hair and blood on the axe. I can tell the difference between negro and white folk's hair. That was kinky hair on the axe. Ab McGill had kinky hair.' " As this matter was presented, we are of opinion there was no error shown. The statement of the court was not a comment on the weight of the evidence. It did not convey to the jury any idea of what the court thought as to the hair. The court was correct in admitting the testimony, and we are of opinion that his statement ought not to be considered a comment on the evidence. It was simply an expression of doubt as to whether it would take an expert to tell the different kind of hair, or the hair in question was negro hair.

8. Another bill of exceptions recites that Poole, in testifying, identified $5 in silver, $4 and two half dollars, as the money that was taken from the defendant the morning after the alleged killing of Ab McGill. This was objected to on the ground that it served no useful purpose, and that there was no identification of the money as the money that was owned by the deceased. These are but grounds of objection, and not statement of the fact that the money was not owned by McGill. Going to the record, we find this money was sufficiently identified and connected up to show that it had belonged to deceased.

9. Another bill of exceptions objects to the testimony of Kirkpatrick that he found tracks on the ground running from the back of the house and leading across the lane larger than a number eight shoe, and were about the size of tracks made by defendant. The objection to this testimony was that it was but an opinion of the witness. The court qualifies this bill as follows, copying from the stenographic report of the facts: "I do not know how long those tracks were in inches. That was a pretty good sized shoe. It was longer than the ordinary. It was larger than a number eight shoe. The track was rather a large track." This testimony was properly admitted. Testimony of this sort nearly always has more or less tinge of opinion, but our authorities treat it more as a shorthand rendering of the facts than as expert testimony.

10. Another bill recites that appellant, before announcing ready for trial, moved the court to set aside the venire therein drawn, first, because a venire of sixty men had been ordered and but forty-five

served; second, because there was not sufficient reason given why the fifteen jurors not served were not served; third, because out of the forty-five served but twenty-three were present; and, fourth, bcause it was clearly impossible to get a jury out of the number of jurors present. This bill was approved with this qualification: "No written motion to quash the venire was made before an announcement of ready for trial. During the progress of the case a written motion to postpone the case until a venire could be drawn was made. This motion was made after three jurors had been selected. A verbal motion was made prior to the announcement of ready for trial, and upon a hearing of the same the court found the facts to be as follows: A venire of sixty men was drawn. Of this number forty-five were reported as summoned by the sheriff; of the fifteen not summoned the return of the officer showed that three were out of the county and could not be served; eleven were reported not found, one of whom was a road overseer, and one reported not served because over age, and for that reason not subject to jury service, thus accounting for the fifteen not served. Of the forty-five summoned, · twenty-three appeared and answered to their names. Of the absent twenty-two the following was found to be a fact." It is unnecessary to repeat this qualification as the name of each juror is set down and reason given for his absence. Some of them were excused by counsel, some were sick. One was a minister of the gospel. One or more had moved out of the county. Several of them had sickness in their family. One was an editor of a newspaper, and another a minister of the gospel. The court then states: "With the excuses rendered above and the excuses made by counsel four names were absent, unexcused or unaccounted for. Counsel for defendant made no motion for attachments to bring in the absent veniremen." As this bill presents the matter we are of opinion there is no error shown.

11. Objection was made to the introduction in evidence of the overalls worn by the defendant at the time of the homicide. The overalls were identified and shown to have had blood stains and spots upon them, and at one place it appeared as if someone had tried to rub the blood off, leaving a smear. Under the circumstances of this case we think the overalls were admissible in evidence. Whenever bloody clothing or instruments of crime or matters of that sort tend to connect the party with the criminal transaction, they are admissible. This question has been discussed at various times by this court in the opinions. Under this record this testimony was admissible, it being a case of circumstantial evidence, and this was one of the means of connecting appellant with the homicide. There are several bills of exception reserved along this line.

12. Another bill of exception recites that after the special venire had been exhausted only three jurors had been selected, whereupon defendant made the following motion: "Now comes defendant, moves the court to postpone this cause for the following reasons:

A special venire of sixty men were ordered, and but twenty-three appeared, and out of that number but three were selected. The remainder of the jury will have to be selected from jurors summoned· by the sheriff, and in effect denying the defendant his right to select his jury from a venire selected according to law." This was over-ruled and a bill of exceptions reserved. The ground of objection urged by appellant was that it appeared from the̊ action and conduct of the sheriff that he was prejudiced against defendant, and a jury selected by him would not be as satisfactory to defendant nor as just as one selected according to law. The court qualifies this bill in the following language: "There was no testimony adduced on said motion whatever and there was no showing made as to it appearing from the actions and conduct of the sheriff that he was prejudiced against the defendant, and a jury selected by him would not be as satisfactory to defendant nor as just as one selected otherwise. And that there was no desire expressed by the defendant nor any intimation that the summoning by the sheriff of jurors would be done unfairly and that there was absolutely no ground for any such charge either in the conduct or actions of the sheriff." The court followed the legal way of having the jury summoned, that is, by the sheriff after the special venire had been exhausted, and there being nothing to show there was any prejudice on the part of the sheriff, that part of the motion would fail. We are cited to the case of Keith v. State, in 50 Texas Crim. Rep., 63, in support of this motion. That case would support appellant's contention, but in the case of Mays v. State, in the same volume, page 165, the rule, after a thorough investigation of it on motion for rehearing, was changed, that is, it was held that the rule laid down in the original opinion in the Mays case, which was in accordance with that in the Keith case, was erroneous, and the Mays case has since been followed. The Mays case lays down the correct proposition and has been followed in Blackwell v. State, 51 Texas Crim. Rep., 24.

13. We have not reviewed all the bills of exceptions seriatim inasmuch as several of them presented the same character of testimony as introduced from different witnesses set out in bills already mentioned, but we believe we have covered all the questions suggested for revision. We are of opinion that appellant has had a fair trial, and that none of the rulings of the trial court were of such character as require or authorize us to reverse the judgment. The testimony, we think, is ample to sustain the conviction. It shows that McGill was murdered by somebody in his sleep, lying upon his bed, and that appellant had been fully connected with the crime, and was the only party, perhaps, so far as this record is concerned, present at the killing, and that he killed deceased with an axe. He was subsequently found with the same or similar money that deceased is shown to have had only a short time prior to and on the same night of the homicide. The jury saw proper to give

appellant lifetime imprisonment in the penitentiary and not the death penalty.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied December 7, 1910.—Reporter.]