PAUL WELCH v. THE STATE.

No. 1085.   Decided April 24, 1912.

Rehearing Denied May 22, 1912.

1.—Murder—Indictment—Plea in Abatement—Grand Jury—Witness—Statutes Construed.

Under Article 397, Code Criminal Procedure, objections to the qualification and legality of the grand jury must be made before the same has been empaneled, and where defendant in his plea in abatement named none of the grounds for challenge as enumerated in Article 401, id., his contention that one of the grand jurors was a witness in the case and that the indictment should be quashed therefor was not well taken.

2.—Same—Evidence—Letters of Guardianship—Motive.

Where the homicide grew out of a matter of letters of guardianship, there was no error in admitting these in evidence to show motive.

**3.—Same—Evidence—Clothes of Deceased.**

Where, upon trial of murder, there was some contention as to the attitude of deceased at the time of the killing, there was no error in admitting testimony as to how deceased wore his shirt sleeve on the right arm.

**4.—Same—Witness Under Rule.**

Where it was shown that the State's witness did not hear the testimony of the defendant and that he was not in the courtroom at the time the latter testified, but was placed under the rule during the progress of the trial, there was no error in the discretion of the court in permitting the witness to testify.

**5.—Same—Evidence—Discretion of Court.**

It was in the discretion of the court to refuse to permit a witness for the defense to take the witness stand while the State's attorney was making his closing address; besides, the testimony was immaterial.

**6.—Same—Charge of Court—Manslaughter—Pain and Bloodshed.**

Where, upon trial of murder, the evidence raised the issue that defendant was assaulted which caused either pain or bloodshed, and the court's charge on manslaughter directly applied the law to this state of facts and no special charge was requested, there was no error under Article 723, Code Criminal Procedure.

**7.—Same—Adequate Cause—Insult to Female Relative—Charge of Court.**

Where, upon trial of murder, the evidence raised the issue of insulting words by the deceased towards defendant's wife, and the court submitted this matter together with the reasonable doubt in a proper charge, when considered as a whole, there was no error.

**8.—Same—Charge of Court—Self-Defense.**

Where, upon trial of murder, the court, in his charge on self-defense, submitted the law of unlawful attack and apparent danger in a proper manner and the defendant requested no special charge amplifying this matter, there was no error.

**9.—Same—Evidence—Bill of Exceptions.**

Where upon appeal from a conviction of murder, the appellant complained as to testimony with reference to the introduction in evidence of the shirt of deceased, but the bill of exceptions did not show that said shirt was introduced in evidence and was wholly insufficient on this point, there was no error; besides, if the same was introduced to locate deceased's position and attitude at the time of the killing in connection with the wound on the body and the hole in his shirt made by the bullet, the same was admissible in evidence.

**10.—Same—Argument of Counsel—Charge of Court.**

Where, upon trial of murder, the district attorney, in his closing speech, referred to the bloody shirt in evidence, etc., while improper, yet, the court, in his main charge, having instructed the jury not to consider such argument and there being no requested charge to withdraw same, there was no reversible error.

**11.—Same—Charge of Court as a Whole.**

Where, upon trial of murder, the charge of the court, when read as a whole, was a proper application of the law to the facts, there was no reversible error.

**12.—Same—Evidence—Clothing of Deceased.**

Where, upon trial of murder, there was a controversy about the position of deceased at the time he was shot by the defendant, there was no error in admitting in evidence the shirt of deceased to show the location of the wound and thereby the alleged attitude of deceased. Following Milo v. State, 59 Texas Crim. Rep., 196, and other cases.

**13.—Same—Argument of Counsel.**

　　Where the court, in his main charge, instructed the jury not to consider the remarks of counsel that could be said to be objectionable, and there were no special requested charges with reference thereto, there was no error.

　　Appeal from the District Court of Lamar. Tried below before the Hon. Ben H. Denton.

　　Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

　　The opinion states the case.

　　*W. F. Moore* and *B. B. Sturgeon* and *J. G. Dudley,* for appellant. —On question of insufficiency of indictment: Rothschild v. State, 7 Texas Crim. App., 519; Carter v. State, 39 Texas Crim. Rep., 345; Mattox v. United States, 146 U. S., 140.

　　On question of admitting in evidence letters of guardianship: Ex Parte Smith, 94 U. S., 455; Grace v. Insurance Co., 109 id., 278; Smith v. McNeal, id., 426; Insurance Co. v. Rhoads, 119 id., 237; Fishback v. Tel. Co., 161 id., 96; Overand v. Menczer, 83 Texas, 122; Wheeler v. Ahrenbeak, 54 id., 535; Gulf, C. & S. F. Ry. Co. v. Rawlins, 80 id., 579; Groszehmigem v. State, 57 Texas Crim. Rep., 241; Smith v. State, id., 455.

　　On question of court's charge on self-defense: Hightower v. State, 56 Texas Crim. Rep., 248; Cordono v. State, id., 450; Rice v. State, 51 Texas Crim. Rep., 255, 103 S. W. Rep., 1156; Wheeler v. State, 58 Texas Crim. Rep., 296; Aycock v. State, 61 Texas Crim. Rep., 9, 133 S. W. Rep., 683; Barnes v. State, 57 Texas Crim. Rep., 449; Swain v. State, 48 Texas Crim. Rep., 98, 86 S. W. Rep., 335; Renow v. State, 56 Texas Crim. Rep., 343.

　　On question of witness under rule: Welhausen v. State, 18 S. W. Rep., 300; Rummel v. State, 22 Texas Crim. App., 558.

　　On question of introducing shirt of deceased in evidence: Cole v. State, 75 S. W. Rep., 527; Christian v. State, 79 S. W. Rep., 562; Melton v. State, 47 Texas Crim. Rep., 451, 83 S. W. Rep., 822; Crenshaw v. State, 48 Texas Crim. Rep., 77, 85 S. W. Rep., 1147; Lucas v. State, 50 Texas Crim. Rep., 219, 95 S. W. Rep., 1055.

　　Where improper remarks of the district attorney are of such character as to render it obviously injurious to the rights of the defendant and strongly tends to deprive him of a fair and impartial hearing before the jury, and the matter is properly presented by a bill of exceptions, the fact that no special charge was asked instructing the jury to disregard such argument will not deprive the defendant in a proper case of a reversal. Davis v. State, 54 Texas Crim. Rep., 236; Taylor v. State, 50 Texas Crim. Rep., 560; Jenkins v. State, 49 Texas Crim. Rep., 457; Robbins v. State, 47 Texas Crim. Rep., 312; Murmutt v. State, 67 S. W. Rep., 58.

　　Even though the court should instruct the jury to disregard the improper argument, yet if it is of such a nature as to be obviously

hurtful and prejudicial to the defendant, it will require a reversal. Smith v. State, 55 Texas Crim. Rep., 569; McKinney v. State, 56 Texas Crim. Rep., 182; Smith v. State, 44 Texas Crim. Rep., 142.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted, tried and convicted of murder in the second degree, and his punishment assessed at twenty-five years in the penitentiary.

According to the State's testimony, Russell Ward had qualified as guardian of his brothers and sisters and gone to the house of appellant after two of the children and there met his death. It seems that the father of deceased died in May; that two of his sisters were staying at the house of appellant; that appellant, prior to the death of the father, had talked to the person he killed, and had told him (he) defendant would qualify as administrator and guardian of the children. To this deceased objected, when appellant remarked to the other children that Russell was bull-headed; that he was not fit to be guardian of the children of the father, who had left an estate, and said, "If you G—d d—d boys don't do as I tell you, you will see what you come to." A few days before the killing Russell Ward met appellant in Paris and told him he was going to qualify as guardian of his brothers and sisters, and appellant questioned him being twenty-one years of age, and when deceased stated he was twenty-one, appellant called him a G—d d—d liar, and told deceased at that time if he qualified as guardian he would put him (deceased) in the penitentiary for false swearing. Other statements of appellant to the same effect on different occasions were proven. On the morning of the homicide, Russell Ward and his brother, Roy, went to the home of appellant and showed him letters of guardianship issued to Russell Ward by the Probate Court. They did not get inside the yard fence, but remained outside, and when Russell asked appellant if he would let him have the children, he replied, "No, sir, not under any circumstances." Deceased replied that he would go according to the order of the court, and further added, "I understand you (referring to appellant) have said I was going to take the girls to a disorderly house—it is a lie." Appellant jumped the fence, when deceased said, "I did not come up here to have any trouble," and started away, appellant replying, "Get out of here, you low-down rascal, I will beat you to death," overtook and grabbed deceased and began striking and kicking him. Where the conversation first began was at the yard fence of appellant while the point where deceased was killed was seventy-five yards down the road, towards Mr. Kesling's. It would seem that while deceased was retreating, and appellant was striking him, the younger brother, Roy, ran to the wood pile and got a stick of wood and returned to the scene of the difficulty, requested appellant to turn loose his brother, and when he made

gestures as if he were going to strike appellant, appellant ran his hand in his back pocket, and said, "I will kill you." The younger brother says appellant then shoved Russell against him, when he dropped the stick and appellant grabbed them both and they all fell, Russell falling under the bottom, he next and appellant on top of both of them. Appellant called to his wife to bring him his gun, and while Mrs. Welch was coming with the pistol, he got loose and run, and called to his brother to run. He describes the scene thus: "When I saw her with the pistol I run, and appellant had Russell by the right hand dragging him towards his wife to get the gun, Russell pulling back all the time. He had hold of Russell's right hand with his right hand. Russell was trying to get loose all the time he was dragging him toward the gun. His wife handed him the gun and he took it in his left hand and shot the boy in the right side. When Russell was shot he halloed, groaned and fell to the ground." This version is corroborated in the main by Mr. and Mrs. Kesling, who say they witnessed the unfortunate homicide. George Holman, who aided in washing and dressing deceased, says: "There was an abrasion and bruise on his forehead almost across his forehead, and his left jaw was all blood-shotten and seemed to be soft and mashy, and there was a considerable cut right across the nose thereabout where a person's glasses would rest, and it was bleeding, and there were bruises on his stomach and groin and his lips were bruised and purple and there was blood in his mouth; I could not say whether it was his lips caused it or not, but then there was blood in his mouth. There was a wound in his left groin something like the size of your hand, something like a person had kicked him there, something of the kind, just a large bruised place and it was purple. There was one or two small bruised places on his stomach; I think there was two on his stomach and there was a skinned place on his shins also. He was shot something like four inches above the right nipple and the bullet ranged downward and angling across the body. I saw his clothes; there was a hole about the size of a half dollar burned in his top shirt on the right side and then his sleeve and sleeve-holder was pulled down over his hand something like along there—the cuff of the shirt and then the holder was down on his hand also, it was pulled right down right about his wrist there. The shirt shown me is the one Russell Ward had on at the time I undressed him."

Appellant says that when deceased and his brother came to his place and showed him the letters of guardianship, that he told deceased he could get the girls, when deceased remarked, "What have you been going around telling all those d—ned lies on me for?" when he asked deceased what he had been saying, and said I have said more to Roy than anyone else. That he did not know anything about it, but if what he had heard was true, it was bad. Deceased

then remarked, "I hear you are saying that I am not twenty-one years old;" appellant says he replied, "I have got your word for it, and I have got the school roll, and then I told him, that my wife tells me that George Holman said your father and mother were married in 1886, when deceased replied, "It's a G—d d—n lie; he never told her any such thing." Appellant says he then climbed over the fence, when deceased ran his hand in his pocket, when he (appellant) drew back and struck at him, when deceased turned to run and he struck him between the shoulders. He says the fight then began, and the fight kept up all the way down the road to where the killing occurred. That Roy came running up with a stick over his shoulder, when he reached and put his finger in Roy's eye. That Russell threw him and he fell on his back, with Russell on him, and Roy hit him with the stick. At this time he called to his wife to bring him his gun, they were killing him. That when she got there with the gun he was flat on his back and both the Wards were on him. That when she called to them, they turned loose and all jumped up, when he grabbed the pistol out of his wife's hands, and as Russell Ward was standing there with the stick, he shot him. His wife corroborates him in many essentials. This is a brief statement of the salient facts from the standpoint of both parties, and is enough to render intelligible the ruling of the court on the questions raised.

In the first two bills of exceptions appellant complains of the court in striking out his motion to quash the indictment and plea in abatement. The contention is, that as one of the grand jurors was a witness in the case the indictment should be quashed. The causes for challenge to a grand juror are enumerated in article 401 of the Code of Criminal Procedure, and the grounds alleged in the plea and motion present none of the grounds named for such challenge, consequently the court did not err in sustaining the motion. In addition to this, the challenge came too late. At the time of the organization of the grand jury, appellant was in jail charged with this offense, and article 397 provides that at any time before the grand jury has been empaneled, a challenge may be made, and if a person is in jail, and he requests, he shall be brought into court to make the challenge, and it further provides that in no other way shall objections to the qualifications and legality of the grand jury be heard. It is true that in some of the decisions it has been held that where a person had no opportunity at the time the grand jury was empaneled, the question could be raised at a later time, but in no instance has it been permitted where the opportunity was afforded at the time of the organization of the grand jury. State v. Vahl, 20 Texas, 779; Johnson v. State, 33 Texas, 570; Reed v. State, 1 Texas Crim. App., 1; Cordova v. State, 6 Texas Crim. App., 445; Hart v. State, 15 Texas Crim. App., 202; Lacy v. State, 31 Texas Crim. Rep., 78.

In several bills of exceptions objections are urged to the introduction of the letters of guardianship and the order of the court

appointing deceased guardian of his brothers and sisters, including the two girls staying at appellant's house. The judgment of the Probate Court, being regular on its face, could not be collaterally attacked, and the letters admitted are shown by the evidence to be the identical letters of guardianship presented by deceased to appellant on the morning of the tragedy. There was no error in overruling the objections made and in admitting this testimony, for it shows that appellant knew the mission of deceased, and under the evidence in this case this testimony would tend strongly to show the motive of appellant in killing deceased if he unlawfully killed him. Rev. Stats., arts. 2306, 2312; Harvey v. Edens, 69 Texas, 420; Collins v. Ball, 82 Texas, 259. If the State's theory was correct, appellant had threatened to penitentiary deceased if he qualified as guardian; when shown the letters of guardianship, he said he would not give up the girls, and when deceased intimated he would get them if the law authorized, the difficulty followed in a short time thereafter, this being evidence tending to show the motive of appellant in his actions.

It will be seen by the above testimony that the State's contention was that at the time appellant shot deceased he had deceased by the right hand pulling him towards his wife; while appellant's contention was that deceased was standing up with a stick drawn on him. Under these conditions it was not improper for the court to permit witnesses who saw deceased on the ground, and witnesses who aided in undressing him, to testify that the shirt sleeve on the right arm was pulled down over the right hand. This would be a material circumstance in aiding the jury to pass on the two theories thus advanced.

It appears that all witnesses were placed under the rule. Ernest Ward was not sworn as a witness at the beginning of the trial, but was placed under the rule as a witness during the progress of the trial. When he was offered as a witness, the defendant objected to him testifying, on the ground that he had been in the courtroom and heard a portion of the testimony. The witness was placed on the stand to prove statements of appellant. It was shown he was not in the courtroom at the time appellant testified, consequently there was no error in permitting him to testify. This is a matter within the sound discretion of the trial court, and it would only be an abuse of this discretion that would authorize us to consider such action. In this case, it appearing that the witness did not hear Mr. Welch's testimony, the court properly permitted him to testify.

The court did not err in refusing to permit the defendant's counsel to place the witness Blair on the stand, while the district attorney was making the closing address. This is another matter that the Code places in the discretion of the trial judge. (Article 698 of Code of Crim. Proc., and section 766 of White's Ann. Proc., and authorities there cited.) In addition to this, it would be immaterial

if the "woman laughed when she was first told of the death of Russell Ward and thought it was a joke." That this landlady thought it was a joke and laughed would not be admissible for any purpose, so far as we can discover from the record.

The court charged the jury, among other things: The following are deemed adequate causes: "An assault and battery causing either pain or bloodshed is deemed adequate cause. Insulting words or conduct of the deceased to the defendant, about or concerning the defendant's wife is also an adequate cause." Then:

"If you believe that the defendant shot and killed Russell Ward at the time and place alleged in the indictment, yet if you further believe that just prior to the shooting that said Russell Ward, or Roy Ward, or both of them, assaulted the said defendant with their fists, or with a stick, which assault caused either pain or bloodshed to the defendant, and that such assault created in the mind of the defendant such a degree of anger, rage, sudden resentment or terror as to render his mind incapable of cool reflection, and while in such a state of mind he fired the fatal shot, then if you do not find the defendant justifiable under the evidence and instructions given you, he would not be guilty of any higher grade of offense than manslaughter.

"If you believe that the defendant shot and killed the deceased at the time and place alleged in the indictment, yet if you further believe that prior to the shooting the said Russell Ward had used insulting words or conduct to the defendant about, or concerning his (defendant's) wife, and that such insulting words or conduct, if any, created in the mind of the defendant such a degree of anger, rage, sudden resentment, or terror as to render his mind incapable of cool reflection, and while in such a state of mind he shot and killed the deceased, then if you do not find the defendant justifiable under the evidence and instructions given you, he would not be guilty of any higher grade of offense than manslaughter." Appellant criticizes these paragraphs of the court's charge, first insisting that the court should have summarized all the facts testified to by appellant, instead of only telling them an assault causing pain or bloodshed would be adequate cause to reduce the offense to manslaughter, and if deceased or his brother, Roy, assaulted appellant with their fist or fists, or with a stick and this created anger, rage, etc., he would be guilty of no higher grade of offense than manslaughter. This was applying the law directly to the evidence, and the jury could not have been misled, because, if the jury believed any part of the testimony offered along this line, they would necessarily have found that appellant was assaulted with the fists or with a stick, and by article 723, Code Criminal Procedure, we are prohibited from reversing a case unless the error, if error there be, is such that it was calculated to injure the rights of a defendant. Where the court applies the law to the evidence in his charge, one should

not be heard to complain that it was not amplified as he would have preferred, unless he has asked that it be so done. (Crutchfield v. State, 7 Texas Crim. App., 65; Hodges v. State, 6 Texas Crim. App., 615.) And where the court has submitted an issue and one desires any amplification of that issue, he ought to prepare a special charge, and if he does not do so, if the matter is not such an omission as injures the rights of the defendant, we will not reverse the case.

The second criticism of the charge that it places the burden on defendant to prove that the deceased used insulting words towards his wife, we do not think is maintainable. A charge must be read as a whole. It is true that appellant swore deceased used the language, while Roy Ward is equally positive no such language was used. In this charge the court tells the jury what it would take to reduce the offense to manslaughter, and then instructs the jury, "if from the evidence they believe beyond a reasonable doubt, defendant was guilty of some grade of culpable homicide, but they had a reasonable doubt whether the offense (if any) was murder in the second degree or manslaughter, then they must give the defendant the benefit of the doubt, and in case he was found guilty, find him guilty of no higher grade of offense than manslaughter," and in addition thereto applied the doctrine of reasonable doubt to the whole case.

The court, after giving the usual charge, defining self-defense, instructed the jury: "Now, if you believe from the evidence that the defendant, Paul Welch, shot and killed Russell Ward at the time and place alleged in the indictment, but you further believe that at the time of the killing said Russell Ward or Roy Ware, or both, had made, or was making an unlawful attack upon the defendant, or had done, or was doing some act or acts, which either alone or together with accompanying words of said Russell Ward, or Roy Ward, or both, if any, produced in the defendant's mind as viewed from his standpoint, a reasonable apprehension of death or serious bodily injury at the hands of said Russell Ward or Roy Ward, or both, and that he did such killing to protect himself from such danger or apparent danger, then such killing was in justifiable self-defense, and if you so find, or if you have a reasonable doubt as to whether said killing was in justifiable self-defense or not, you will find the defendant not guilty."

The criticism is that instead of instructing the jury "if deceased or Roy Ward, or both, had made or was making an unlawful attack or had done, or was doing some act or acts," the court should have applied the law more pertinently to the evidence. As said hereinbefore, if the appellant desired a more amplified charge, he should have directed the court's attention to it at the time. The charge fully submitted self-defense under the evidence, and the jury could not have been misled thereby, and the instruction is not subject to criticism.

There was no bill of exceptions reserved to the introduction of the shirt in evidence. Consequently, we can not review this question; neither was there any bill of exceptions reserved to the introduction of appellant's testimony in the habeas corpus trial, so we can not review this question.

There were several bills of exceptions reserved to remarks of the district attorney in his closing address. No special charges were requested in regard thereto, and under numerous decisions of this court, in the absence of a requested charge, this presents no error. The court in his main charge instructed the jury: "You will not consider the argument of the district attorney in his closing speech, wherein he stated, while holding the shirt up, what the shirt showed about the cuff or cuffs, nor that part of the argument where he stated that the shirt showed blood on it, or about the bloody shirt." Prosecuting officers should always keep within the record, and in some instances we might feel called on to reverse a case because of improper argument that would inflame a jury, and but for this charge given by the court, without a request of defendant, we would feel strongly inclined so to do in this case. But inasmuch as this charge was given, and there was no charge requested by defendant in regard to the remarks of the district attorney under the decisions of this court, we do not feel authorized to do so. Dodson v. State, 45 Texas Crim. Rep., 574; Ball v. State, 44 Texas Crim. Rep., 489, 78 S. W. Rep., 508; Drye v. State, 55 S. W. Rep., 65; Frizzell v. State, 30 Texas Crim. App., 42; McConnell v. State, 22 Texas Crim. App., 354; Purdy v. State, 50 Texas Crim. Rep., 318; Glascow v. State, 50 Texas Crim. Rep., 635; Winslow v. State, 50 Texas Crim. Rep., 465; Tune v. State, 49 Texas Crim. Rep., 445; Vann v. State, 48 Texas Crim. Rep., 11; Miller v. State, 47 Texas Crim. Rep., 329; Bailey v. State, 45 S. W. Rep., 708.

There are in the motion for a new trial some other criticisms of the charge, but when we read the charge as a whole there is no foundation for them.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### May 22, 1912.

HARPER, JUDGE.—Appellant has filed a motion for rehearing, in which he insists that we erred in stating that no proper bill had been reserved to the introduction of the shirt in evidence, and refers to bill No. 5, which reads as follows:

"Be it remembered that upon the trial of the above entitled cause, the following proceedings were had, to wit: While the witness George Holman was testifying in behalf of the State the shirt which deceased wore at the time he was killed by the defendant was exhibited

to said witness, which shirt was very bloody and the said witness was asked the following question, to wit:

"Q. 'Mr. Holman, I will get you to look at the left sleeve of that shirt and state what is on it, if anything, what do you call it?' A. 'I call them sleeve holders.'

"Q. 'Where is the sleeve holder of the left sleeve?' Whereupon the defendant by his attorneys made the following objections, to wit: Defendant objects, it is immaterial and inadmissible because there is no proof now, that where they are now is where they were on it then nor when they were put on it; who has had it in their possession and who has adjusted those things, if anybody. The clothing of the deceased are only admissible to locate the wound and can not be admitted for any other purpose and it is hearsay and the courts go further and say that the clothing should never be permitted to be introduced unless necessary to locate the wound and never admissible except for that purpose and they go further and say should never be admitted unless necessary to locate the wound.

"Defendant saves a bill of exceptions to the State exhibiting this bloody shirt to the jury and offering it in the presence of the jury further, on the ground that there is no contention yet or any controversy as to the location of the wound and no necessity for it."

In approving the bill the court says: "The foregoing bill of exceptions is hereby allowed and ordered filed as a part of the record in this case, as defendant's bill of exceptions No. 5, with this explanation, that the court will see from an examination of the testimony that there was a controversy about the position deceased was in when he was shot, the State contending that the defendant had deceased by the wrist pulling him (deceased) at the time the shot was fired and the defendant contending that the deceased had a stick drawn in a striking attitude when he fired."

It will be seen that the bill itself does not show that the shirt was introduced in evidence. All it says is: "That the defendant objected to the State exhibiting it to the jury and offering it in the presence of the jury." In the case of Wilson v. State, 32 Texas Crim. Rep., 22, it was held that a bill of exceptions which merely recites that the evidence was *offered by the State,* but which does not affirmatively show that the evidence was admitted, is wholly insufficient, and the court on appeal will not be called upon to determine the admissibility of such testimony. (See also Rogers v. State, 34 Texas Crim. Rep., 612; Thompson v. State, 33 Texas Crim. Rep., 217; Simms v. State, 32 Texas Crim. Rep., 277). In this bill it is only shown that the State exhibited the shirt and offered it in evidence, and it does not appear that it was introduced. In passing on this bill in the original opinion, we discussed it from the standpoint as to whether or not the State had the right to show that the shirt at the time deceased was killed was pulled down over his hand, and held that it did. If it was necessary to show the position of deceased at the time he

was killed, the shirt or anything else which would demonstrate that to the jury would be admissible. As said in the original opinion, appellant's contention was that deceased held a stick in his hand, and had it drawn back ready to strike when he shot. The State's testimony is that deceased had no stick, but that appellant had him by the wrist, and drew him towards his wife, from whom he obtained the pistol, and while holding deceased in that position, shot him to death. If in order to locate deceased's position and attitude at the time of the killing, in connection with the wound on the body, and the hole in the shirt made by the bullet, it was necessary to take the shirt and describe its position on the body at the time he was shot, all such evidence would be admissible. While it is true that a shirt, or other garment, is not admissible unless it serves some useful purpose in depicting to the jury the location of the wound, or the attitude of the parties at the time of the difficulty, yet if the shirt served the purpose of enabling the jury to better pass on the question of whether the State's or appellant's contention as to the attitude of deceased at the time he was killed was correct, there was no error in admitting it, if it was admitted in evidence. In the case of Milo v. State, 59 Texas Crim. Rep., 196, 127 S. W. Rep., 1025, this court held that it is permissible to introduce bloody clothing when its introduction serves to illustrate some point or solve some question, or throw light upon the matter connected with the proper solution of the case, and when the clothing, in the light of the whole case, would aid the jury in arriving at the very truth of the matter, the court should not hesitate to admit its production. (See also Adams v. State, 48 Texas Crim. Rep., 452; Sue v. State, 52 Texas Crim. Rep., 122; Dobbs v. State, 54 Texas Crim. Rep., 550; Long v. State, 46 S. W. Rep., 640; Williams v. State, 60 Texas Crim. Rep., 453, 132 S. W. Rep., 345; King v. State, 13 Texas Crim. App., 277.)

The only other ground in the motion for rehearing is that notwithstanding appellant requested no special charges in regard to the remarks of counsel for the State complained of, yet this court should reverse the case any way, because of such remarks. We are not prepared to overrule the long line of decisions holding otherwise, especially in view of the fact that the court in his main charge instructed the jury not to consider the only remarks that could be said to be objectionable, without request from counsel. In addition to the authorities cited in the original opinion, see section 170, Buckley's Digest, Argument of Counsel, wherein will be found cited a long list of cases decided by this court.

The motion for rehearing is overruled.

                                        *Overruled.*