### Nathan A. Hughes v. The State.

#### No. 2663. Decided November 26, 1902.

**Misconduct of Jury in Discussing Previous Verdicts.**

On the third trial of defendant, the jury, before agreeing upon a verdict of manslaughter, discussed the two previous verdicts of conviction of defendant in another county. Held, the statute is imperative in inhibiting jurors from discussing previous convictions as a predicate for their verdict, and such misconduct constitutes reversible error.

Appeal from the District Court of Cooke, on change of venue from Denton County. Tried below before Hon. D. E. Barrett.

Appeal from a conviction of manslaughter; penalty, three years and six months imprisonment in the penitentiary.

The appellant, Nathan A. Hughes, was charged by indictment presented in the District Court of Denton County, on August 30, 1899, with the murder of George Frampton, alleged to have been committed in Denton County, Texas, on the 12th day of June, 1899. In March, 1900, appellant was tried and found guilty of murder in the second degree and his punishment assessed at confinement in the penitentiary for twenty-five years, but on an appeal to this court the judgment was reversed and the cause remanded. Hughes v. State, 43 Texas Crim. Rep., 511. On the 26th day of September, 1901, the appellant was again convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for twenty-one years. On another appeal to this court the judgment of the lower court was against reversed and the cause remanded on account of the misconduct of the jury. Hughes v. State, 43 Texas Crim. Rep., 511, 4 Texas Ct. Rep., 441. On the 5th day of April, 1902, Hon. D. E. Barrett, the trial judge, on his own motion granted a change of venue in the case to Cooke County. The case was again tried in Cooke County on the 7th day of June, 1902,

when appellant was found guilty of manslaughter and his punishment assessed at three years and six months in the penitentiary.

After the jury had received the charge of the court and retired to consider of their verdict, and while they were disagreed with reference to the verdict to be rendered, six being in favor of acquittal and six in favor of conviction, two or more of the jurors who were in favor of conviction stated and argued to the jury that the defendant had been convicted twice in Denton County and given twenty-five years in the penitentiary upon one trial and twenty-two years upon the other, and that the people of Denton County were expecting a verdict corresponding with the former verdicts, and would feel outraged at a verdict assessing a lighter penalty. This matter of the former verdicts was discussed by the jury more than once while they were trying to arrive at a verdict.

No further statement necessary.

*Davis & Garnett* and *Alvin C. Ousley,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of manslaughter, and given three years and six months in the penitentiary. This is the third appeal, the former appeals being reported in 60 S. W. Rep.. 563, 43 Texas Crim. Rep., 511, 4 Texas Ct. Rep., 441. The trial in this instance occurred in Cooke County, the venue having been changed from Denton.

Appellant urges various errors, but we do not think any of them well taken, except the misconduct of the jury complained of in the motion for new trial. The jurors testified on the hearing with regard to this matter, and we will make a substantial statement of their testimony, as follows: Perdue, for defendant, stated: That the jury, after receiving the charge of the court, disagreed with reference to the verdict; six being in favor of acquittal, and six in favor of conviction,—one of manslaughter. While the jury were discussing the case, Klepper, Daniels and Reynolds, in favor of conviction, were talking, and two, or probably three, stated and argued that defendant had been convicted twice in Denton County, and given twenty-five years upon one trial, and twenty-two years upon the other, and that the people of Denton County were expecting a verdict corresponding with the former verdicts, and would feel outraged at a verdict assessing a light penalty. Affiant contended that these former verdicts had nothing to do with their duty, and should not be discussed; but the former verdicts and their amounts were discussed upon as many as two occasions by the jurors in favor of conviction, before reaching a verdict. When called by the State Perdue further testified that several of the jurors stated that this had nothing to do with the case, and nobody said it should. "It had no influence on me. I made my verdict on the law and evidence. I was for acquittal at first. The statements about disgrace to Denton County had no influence on me. * * * The men who brought up the Denton County

matter were in favor of long terms. Both times I said we ought not to consider it." Bohannon states the matter practically as does Perdue, and that it did not influence him, and further states, "We all agreed that former verdicts had nothing to do with the case." Ragsdale testified that before the jury had agreed on a verdict the fact that defendant had been tried and convicted in Denton County was mentioned, and at one time Reynolds said that defendant had been convicted in Denton County, and sentenced at one time for twenty-five years, and at another time for some other period, and it would be a shame to give him a light penalty or turn him loose. At another time it was said that it would be an outrage. The matter was discussed as many as two, and maybe more, times. Klepper stated he had heard some one say that Hughes got twenty-five years in Denton County. "I think we got together on agreement of guilty on Friday, after we went out on Thursday. I can not state exactly when the discussion of the Denton verdicts took place. It was talked of on Friday. I at first voted for Hughes' acquittal. On Thursday evening, after reading over the charge, I agreed to convict for manslaughter. I think the others for acquittal agreed on Friday. The former verdicts in Denton did not influence me, and I was not influenced by their discussion in the jury room. I changed my verdict after reading the charge. I did not consider the Denton County verdicts." Rolls also testified about the discussion of the Denton County verdicts as did the other jurors, and that it did not influence him. Blevins, for the State, made affidavit to the effect that his verdict was based solely upon the law and evidence introduced, and in making up the verdict he did not consider anything else. The fact that defendant had been tried before was brought out in the evidence and argument of counsel. It was mentioned by some of the jurymen that they thought defendant was given a certain number of years at a previous trial, but affiant does not remember the number. "But we did not discuss this matter, and it was agreed between us that this matter had nothing to do with our verdict, and I did not consider it in making up my verdict." Reynolds testified that the matter of the former verdicts was mentioned a few times, but it had no bearing on witness, and he saw no indications that it did on others. Witness made up his verdict on the law and evidence introduced on the trial, and was in favor of conviction. Byers and Parker testified to the same effect, as well as Daniels. Klepper testified that his verdict was based on the law and evidence, and the fact that defendant had been twice convicted in Denton County did not influence him. The matter was mentioned a time or two in the jury room. Witness stated that the jury had nothing to do with that, and several others said the same thing. Witness does not remember when the Denton County verdicts were first mentioned. It was during the time the jury were deliberating. Perdue and witness were talking about the evidence, and he said that it was sufficient to hang defendant until he made his statement, but that his looks showed

he was telling the truth. Witness then stated that he took a different view of it, and thought it would be a disgrace to Denton County to turn him loose. Witness stated to the jury that he had overheard a man say that Hughes had been convicted twice in Denton County, and given twenty-five years one time, but stated at the time that this jury had nothing to do with it. Bridges stated from the start he was in favor of manslaugher and a penalty of three years, but was brought up to three and a half years. The fact that defendant had been convicted in Denton County and given twenty-five years, which was mentioned in the jury rooom, had nothing to do with it, however. Did not know whether that was true or not, and did not consider it. Perdue said it had nothing to do with the case, and it was formally agreed that it had not. Keel testified that he based his verdict on the law and evidence. It was mentioned in the jury room, after retiring, that defendant had been convicted twice in Denton County, and given twenty-five years one time, and twenty-eight years the other, but this did not influence him. The Denton County verdicts were referred to once or twice, and by parties who were in favor of a long sentence,—by Klepper and Reynolds. It was stated that the people of Denton County were expecting a long sentence, and they would feel aggrieved or disgraced at a light sentence of that kind.

The court appends the following statement to the bill of exceptions presenting this matter: "And the said testimony of all of said witnesses having been heard and considered by the court,—while it is true, as shown by the record, that defendant has been twice convicted in Denton County, his punishment upon the first of said convictions having been assessed at twenty-five years, and in the second at twenty-one years, confinement in the penitentiary,—yet the court finds that the misconduct of the jury set out in this bill of exceptions was not considered by the jury in rendering their verdict, and did not affect the verdict of the jury, or any member thereof, and the same does not render the court of opinion that defendant has not received a fair and impartial trial; but, notwithstanding such misconduct, the court is of opinion, from the evidence introduced before the jury upon the trial hereof, defendant has received a fair and impartial trial. Wherefore the court concluded that the law is for the State, and overruled said motion," etc.

On the last appeal of this case it was reversed on account of the misconduct of the jury, and we know of no better way to dispose of the present question than to quote what we then said, to wit: "The learned trial judge gave an able, fair, and impartial presentation of the law applicable to the facts, in his charge to the jury, and there are no bills of exceptions that require a reversal. In other words, the record is errorless, except the misconduct on the part of the jury that appellant complains of. This misconduct is so reprehensible and is so fraught with probable injury to the rights of appellant that we can not say that it was not calculated to injure his rights. Instead of a fair and

impartial judgment by the jury upon the facts, and the conclusion from those facts as to the punishment that the law authorized to be meted out to appellant, we have a verdict predicated probably upon the supposed action, in part, at least, of a former jury. This is not a fair and impartial trial, under the laws of this State, nor is it a deduction from the evidence. We can not permit such a verdict to stand." .Hughes v. State, 43 Texas Crim. Rep., 511, 4 Texas Ct. Rep., 441. The statute is imperative, and must be followed, which says that the jury shall not discuss or use the fact of previous conviction as a predicate or probable predicate for their verdict. It is true, as indicated by the court, that each of the jurors stated that the discussion of the Denton County verdicts did not influence their action in finding the verdict. This is a conclusion so wrought with speculation and caprice that we can not make it the basis of holding appellant was accorded a fair and impartial trial. It appears that the jury at the time the matter was discussed were half in favor of acquittal and half in favor of conviction, and that those who urged the previous verdicts as a predicate for the verdict in this case were those insisting upon conviction. Some stated in the progress of the discussion that it would be a disgrace upon Denton County not to render a verdict for a number of years' confinement in the penitentiary. At least this is the substance of their contention. This matter has been passed and animadverted upon by us so often that it is a useless consumption of time to reiterate what we have heretofore said, and we only deem it necessary to cite the most recent decisions of this court on this subject: Lankster v. State, 43 Texas Crim. Rep., 298, 3 Texas Ct. Rep., 437; Mitchell v. State, 36 Texas Crim. Rep., 278; Terry v. State, 38 S. W. Rep., 986; Darter v. State, 39 Texas Crim. Rep., 40; Blocker v. State, 61 S. W. Rep., 391.

Because of the misconduct of the jury, the judgment is reversed and the cause remanded.

*Reversed and remanded.*