## Harmie Horn v. The State.

### No. 3653. Decided November 14, 1906.

**1.—Murder—Special Venire—Return of Sheriff—Talesman.**

Where upon trial for murder the defendant made a timely motion to quash the venire because of insufficient service and return, the court should have either quashed this writ and ordered a new special venire or overruled the motion to quash, or postponed the case to permit the sheriff to further execute process and summon the jurors not summoned on the original list; but he was not authorized to overrule the motion to quash and then order the sheriff to summon as jurors those on the special venire list who had not been summoned and compel the defendant to complete the selection of the jury from said jurors.

**2.—Same—Misconduct of Jury—Allusion to Conviction of Codefendant.**

Upon a trial for murder where the jury in their retirement discussed the trial and conviction of defendant's codefendant, who had been sentenced for fifteen years for participating in the same homicide, before the jury had agreed on defendant's penalty, and one of the jurors discussed the degree of guilt as between defendant and his codefendant, although all jurors claimed that they were not influenced thereby. Held, that the same reason exists against the discussion of a codefendant in this respect as is applicable to the discussion of the former conviction and punishment of the defendant in his own case, and that the judgment must be reversed.

Appeal from the District Court of Hill. Tried below before the Hon. W. C. Wear.

Appeal from a conviction of murder in second degree; penalty, thirty years imprisonment in the penitentiary.

The opinion states the case.

*Alna Bryan, Morrow & Smithdeal,* for appellant.—On question of quashing sheriff's return: Thompson v. State, 19 Texas Crim. App., 593; Osborne v. State, 23 Texas Crim. App., 445; Brotherton v. State, 30 Texas Crim. App., 369; Clark v. State, 8 Texas Crim. App., 350. On question of misconduct of jury: Lankster v. State, 65 S. W. Rep., 373; Mitchell v. State, 36 Texas Crim. Rep., 318; Tutt v. State, 91 S. W. Rep., 584; Morawitz v. State, 91 S. W. Rep., 227.

*J. E. Yantis,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at thirty years confinement in the penitentiary, and prosecutes this appeal. This is a companion case to Jack Early v. State, decided at the present term, and the facts are substantially the same as in that case. The theory of the State was to the effect that appellant and his companion, Jack Early, were intoxicated in a public place in the town of Mount Calm, Hill County, and that deceased (a policeman) attempted their arrest, which was resisted. (He had no warrant and his right to make the arrest was questioned. This was determined adversely to appel-

lant's contention in Early v. State, supra.) Both parties joined in the resistance and during the struggle which ensued appellant cut deceased with a knife, inflicting several mortal wounds, from which he died. That said resistance to the arrest was not justifiable, but appellant and his companion acted with malice, which it was shown they entertained against the officer some time previously. The theory of appellant was to the effect that if deceased was authorized to make the arrest, but used more force than was reasonably necessary in order to accomplish it, and that what appellant did was in his necessary self-defense, at most, he was only guilty of manslaughter in resisting the arrest and slaying the officer. Appellant further insisted that he was not drunk on said occasion, and that the officer had no right to undertake to arrest him, and he was authorized to resist the officer and slay him in order to overcome his attempt to arrest him. The homicide occurred in the night-time, and there were no eye-witnesses present, except appellant who testified in his own behalf. The State's case is mainly circumstantial.

With regard to the special venire and the empanelment of the jury, the following proceedings were had: The court had drawn a list of special veniremen, numbering one hundred and fifty, and the writ was issued to the sheriff to summon said special veniremen. His return of the writ showed some twenty-four not served; and the return of the sheriff showed that twelve of these were not served for want of time. Appellant moved to quash the special venire and return, principally on the ground that the sheriff did not show what diligence he had used in making the service of those not summoned, and he also contested the return of the sheriff because some of the jurors could be found. The court on hearing this motion overruled the same, and ordered the sheriff to bring those jurors whose names appeared on the special venire but who had not been summoned, into court, and ordered the trial to proceed as to those who were present in court. This action of the court was objected to. Seven jurors were selected out of those who had been summoned. In obedience to the order of the court, the sheriff brought in the following jurors who had been drawn on the special venire, but who had been returned by the sheriff not summoned in the original return, to wit: Bean, Crim, Westbury, Cates, Burton, Biggers, Jameson, Jinkins, Brackett, Gunter, and Eldridge. He also brought before the court, R. L. Bookhout, as to whom it transpired he had been served by the sheriff, though the original writ showed he had not been served. When these jurors were brought in, appellant renewed his motion to quash the special venire and the return of the sheriff, and further objected to proceeding with such jurors, because they could not be treated as special veniremen, but had been summoned by direction of the court as talesmen, which the court had no right to do. This motion was overruled, and he was compelled to proceed with the selection of the jury from said named jurors,—being treated by the court as mem-

bers of the special venire. On their examination, Bean, Bookhout (Fenner), and Eldridge were taken on said jury. The others on the list disqualified themselves, except J. P. Biggers, who was challenged peremptorily. The court then ordered talesmen summoned, and the other two jurors were selected to complete the jury from those talesmen. Appellant could not have prevented the taking of all three of said jurors, as he then only had two peremptory challenges left. That subsequently these two challenges were exhausted in the selection of the jury before it was completed. The court explains this bill, which is quite lengthy, by stating that after the venire summoned had been exhausted, the court then ordered the sheriff to summon a number of talesmen, to which defendant objected on the ground that the sheriff had not shown sufficient diligence to summon the men whose names appeared in the special venire list, and who had not been summoned, and appellant claimed the right to have the names of the men on the special venire list and who had not been summoned, before he should be compelled to pass on talesmen. Which objection the court sustained, and the court then and there ordered the sheriff to bring into court each juror whose name appears and was on the special venire, who had not been summoned, which was accordingly done, and after said jurors were so brought into court and examined that at least two or three, to wit: Bookhout, Eldridge and Bean, had been taken on the jury, talesmen were ordered, and from them the jury was completed. This explanation appears to be a contradiction by the court of what the bill shows was done. Of course, it would have been competent for appellant to waive his rights in the premises, and to request the court to have those present who were drawn on the special venire and who were returned not served by the sheriff; and if the court merely responded to this, appellant might be estopped from taking advantage of the action of the court. However, an examination of the bill discloses that appellant made a motion, which was timely, to quash the venire, because of insufficient service and return. The court should have either quashed this writ, and ordered a new special venire, or have overruled the motion to quash, which he appears to have done. In such case, those who were summoned and in attendance on the court only would constitute the special venire, and after these were exhausted, it was the duty of the court to order the sheriff to summon talesmen. But he does not appear to have pursued this course. After overruling the motion to quash he then ordered the sheriff to summon as jurors those on the special venire list who had not been summoned. He was not authorized to pursue this course. He could not treat these absent jurors who had not been summoned as a part of the special venire, because appellant had a right, before he proceeded with the trial, to know who would constitute the special venire, in order to make his selection from a full list. The court might have postponed the case, as appellant requested and prayed him to do, and have authorized the sheriff to further execute

process and summon those jurors not summoned on the original list, and on some subsequent day of the term have proceeded with the trial of the case when appellant could have been furnished with a full list of the jurors summoned. Taking the bill of exceptions, together with the explanation of the court, it does not occur to us that the court was authorized to pursue the method which he adopted. So far as we are advised, the method authorized by law for the special venire to try a capital case is construed strictly and any departure therefrom of a substantial character is depriving defendant of an essential right. Harrison v. State, 3 Texas Crim. App., 558; Osborne v. State, 23 Texas Crim. App., 445, and for other authorities see sec. 709, under art. 638, White's Ann. Code Crim. Proc.

It appears by bill of exceptions that after the jury had retired to consider their verdict, and after they had agreed on appellant's guilt of murder in the second degree, but before the jury had agreed on the penalty—that is, the number of years they would assess as appellant's punishment, that it was mentioned in the jury room that appellant's codefendant, Jack Early (who had been indicted and tried in a separate case for the same offense) had been given fifteen years, and the matter of his punishment underwent some discussion in the jury room, and this misconduct of the jury is assigned as error. On this subject we take from the bill of exceptions some of the testimony adduced. P. L. Goff, one of the jurors, was asked, on his examination: "After the jury retired to consider of its verdict, state whether or not anything was said in the jury room by any one with reference to the trial of Jack Early. A. Nobody but Pat Hooks. Q. What did he say? A. When we were talking about dividing up the number of years we were to give him and the degree of murder, I told him about twenty years; and he said that the innocent man that had never done any cutting of him, they had given him fifteen years— that is what Hooks said to me. Q. That was before you fixed on the amount of the verdict? A. Yes. Q. Pat Hooks was a member of the jury? A. Yes, sir. Q. He was foreman of the jury? A. Yes, sir." The cross-examination of this witness did not materially change his testimony, except he stated that the discussion had no influence on him in rendering his verdict.

H. P. Brannan, another juror, was asked: "Did you hear anything said in the jury room with reference to the conviction of Early? A. Some of them were talking about Early, and some said (I don't remember the names who said it), some talking in regard to Early's sentence; some said, I don't know; some said, I heard he got fifteen years. Q. Was that before the jury got its verdict made out? A. Yes, sir, before the verdict was rendered. Q. Was it not during the time they were talking about how many years they would give Horn? A. That was about the time they had agreed on him being guilty of murder—some of the jury in one degree and some in another. Q. Was it before they had fixed any penalty? A. Yes—any agreed pen-

alty." He further stated that some of the jury were for murder in the first degree, some for manslaughter, and those who were for manslaughter came over to murder. He also stated that the discussion had no influence on him.

Bookhout stated that the matter was discussed. That Malone asked the question why Early was not put on the stand. "I think I answered the question myself, that he had been tried and possibly sentenced, and had no connection with this; that we were trying Horn and not Early. Q. Did you state how much Early got in reply to him? A. Possibly I did. Q. Do you know what he got? Yes, I heard; would not be positive. Q. State your best recollection. Did you not state that Early got fifteen years? A. Yes, sir. Q. That was before the jury returned a verdict? A. Yes; sir."

Eldridge, another juror, was asked, "Do you recall what was said?" A. No, sir; I don't. Heard some of them say he got fifteen years. Breeding was asked, "What did you hear said in reference to Jack Early's case? A. I heard something spoken about Jack Early about the time he was convicted, the number of years, but don't remember much about it; recollect about his name being mentioned; that he had agreed on his guilt before this but not on the penalty." Beane, another juror, stated, in answer to the question what he had heard in the jury room about the Early case, "It seems like I heard his name mentioned, but don't remember what was said. Something was said about his being sentenced for fifteen years for his part in the homicide."

The other jurors testified to about the same effect, and all of them stated that the discussion did not influence them. It was further agreed as a part of the bill of exceptions, that in the argument of the case, counsel for the State, argued before the jury that Early had participated in the fight, and he contended that Early had hit the man with a pistol, and that Horn cut him; and it was further agreed that Early had been tried for his participation in the homicide and convicted and sentenced for fifteen years, and that his case was pending on appeal.

Appellant insists that this was such misconduct on the part of the jury in discussing the case and the punishment inflicted on appellant's codefendant for his participation in the same homicide, as was of a prejudicial character to this defendant, and sufficient to invalidate the verdict. He further urges in this connection that the jurors were all before being taken examined with reference to their knowledge of the facts and the conviction and penalty inflicted on Early on the former trial, and that all of the jurors who knew anything about the penalty and the former case were challenged except Hooks, whom they failed to interrogate on the subject.

There are a number of cases reported in this State where verdicts have been invalidated because the matter of the former conviction of the same defendant was brought to the attention of the jury after

their retirement. Article 823, Code Criminal Procedure, also prohibits the reference to a former conviction, and this has been construed by this court with some degree of strictness. A number of cases have been reversed on this account. Morawitz v. State, 91 S. W. Rep., 227; Tutt v. State, 91 S. W. Rep., 584; McWilliams v. State, 32 Texas Crim. Rep., 269; Mitchell v. State, 36 Texas Crim. Rep., 315; Lankster v. State, 65 S. W. Rep., 373; Terry v. State, 38 S. W. Rep., 286; Darter v. State, 39 Texas Crim. Rep., 47. However, we recall no case in which the discussion of the codefendant's conviction and punishment, in the jury room, has been before this court. But it occurs to us that the same reason exists against the discussion of a codefendant in this respect as is applicable to the discussion of the former conviction and punishment of the defendant in his own case. Here, evidently the suggestion was made that the one who was less guilty had been punished by confinement in the penitentiary for a term of fifteen years. This was before the jury had agreed on their verdict, and must have been intended by the juror who suggested it, to operate on their minds as it could serve no other purpose. After this they agreed on a verdict, assessing his punishment at thirty years confinement in the penitentiary. We do not believe that what occurred can be considered as a bare reference to the matter; but was more than this. Evidently it suggests that the juror or jurors who may have used this argument must have had some prejudice against appellant, otherwise they would not have referred to it. It might not have disqualified a juror who knew this fact; but if a juror not only knew the fact, but used it, this occurs to us, shows he was influenced thereby himself and resorted to it for the purpose of influencing others. Appellant's contention here is supported by an unbroken line of authorities in this State, and is of itself sufficient to reverse this cause.

Appellant excepted to the charge of the court on manslaughter, in that it did not directly instruct the jury that a blow causing pain or bloodshed was in itself sufficient cause. The court did tell the jury that this was sufficient cause, but in applying the law to the facts on this subject, the charge is somewhat involved. Of course, on another trial the learned judge will make the application of the law on this proposition clear. There are a number of other errors assigned; but we do not deem it necessary here to refer to the same.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*