COURTS ⬤⟶247(10) — TEXAS COURT OF CIVIL APPEALS—QUESTION OF BOUNDARY.

The test for determining whether a case is one of boundary, in which event the jurisdiction of the Court of Civil Appeals is final, is whether there would have been any case if there had been no question of boundary, or whether the whole litigation grows out of a question of boundary.

Error to Court of Civil Appeals of First Supreme Judicial District.

Trespass to try title by Laverne F. Kimball against Louis Schiele. Judgment for plaintiff, and defendant appealed to Court of Civil Appeals, where judgment was affirmed (150 S. W. 303), and defendant brings error. Cause dismissed.

Love & Channell, of Houston, for plaintiff in error. Hutcheson & Hutcheson, of Houston, for defendant in error.

PHILLIPS, C. J. The question of our jurisdiction of this case was considered in passing upon the application for writ of error. We overruled a motion to dismiss at that time, and, being of the view that we had jurisdiction, granted the writ. Upon a full investigation it is apparent that the case is one of boundary, of which the jurisdiction of the Court of Civil Appeals is final.

The action was in the form of trespass to try title to certain land, the plaintiff pleading title in fee simple and by limitation. The defendant answered by plea of not guilty and by pleas of limitation, and also pleaded over for the recovery of the land. While the suit had this form, the controversy in fact was over the true location of the boundary line between the adjoining tracts of the parties, and, if not located as the plaintiff contended, whether the defendant was not estopped to assert the contrary.

The plaintiff owned land upon the Moody survey, the defendant upon the Duckworth, two adjoining surveys in Harris County. The Duckworth is the older survey. The Moody survey lies south and west of it, its field notes calling for the south and west line of the Duckworth. The disputed line is the west boundary line of the Duckworth.

At the outset of the trial, the parties made an agreement which, in its effect, was that if the land in controversy was in the Moody survey, the plaintiff was entitled to it; and if in the Duckworth, the defendant was entitled to it, unless his claim was overcome by limitation or estoppel.

In the trial court a verdict for the plaintiff was directed, under the court's view that he had conclusively established his claim of title under five years limitation.

The Court of Civil Appeals found that there was sufficient evidence to sustain the defendant's contention that the west line of the Duckworth was 386 varas west of the line claimed by the plaintiff. This would make the land in suit a part of the Duckworth; and, according to its finding, rendered erroneous the peremptory charge in favor of the plaintiff as to a title by five years limitation, since the payment of taxes relied on to support such a title was only upon land described as in the Moody survey. It further found, however, that under the proof the defendant was estopped from claiming that the location of the disputed line was as asserted by him in the suit, and upon that ground affirmed the judgment.

The test for determining whether a case is one of boundary is: Would there have been any case if there had been no question of boundary? If so, it is not a boundary case. If not, it is necessarily a boundary case, though it may involve questions of title. The determinative inquiry simply is: Does the whole litigation grow out of a question of boundary? Cox v. Finks, 91 Tex. 318, 43 S. W. 1.

The essential question in the present case was whether the land in dispute was in the Moody or in the Duckworth survey. This depended upon the location of the boundary line. Under the agreement of the parties, the defendant was entitled to the land if it was in the Duckworth, unless defeated by limitation or estoppel. The plaintiff's asserted title by limitation of five years depended upon the location of the line. The issue of estoppel likewise concerned only its location. It operated only as a method invoked for locating the line according to the equitable rights of the parties. There were no other possible issues in the case under the agreement. The location of the line was the dominating question of the entire case, and determines its character.

The writ of error was improvidently granted, and the cause is dismissed because the court is without jurisdiction of it.

---

McDOUGAL v. STATE. (No. 4353.)

(Court of Criminal Appeals of Texas. April 18, 1917. Dissenting Opinion May 7, 1917.)

1. CRIMINAL LAW ⬤⟶448(2)—EVIDENCE—CONCLUSION.

In trial for murder, where defendant's wife testified on direct that defendant had shot deceased in self-defense, evidence that she had

stated to the son of deceased that defendant had killed deceased because he had sued him was inadmissible, being a conclusion of the witness.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1036.]

2. CRIMINAL LAW ⊕⇒925½(3)—TRIAL—CONDUCT OF JURY.

In view of Code Cr. Proc. art. 843, providing that, when new trial is granted, former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument, it was error requiring the granting of a new trial for a juror after submission of the cause to remind the jury that the accused had once been convicted, and on proof of such statement accused was entitled to new trial under the mandatory provisions of article 837, providing that new trial shall be granted where the jury have received new testimony after retiring.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2251.]

Prendergast, J., dissenting.

Appeal from District Court, Smith County; R. M. Smith, Judge.

Ira W. McDougal was convicted of murder, and he appeals. Reversed and remanded.

See, also, 185 S. W. 15.

Simpson, Lasseter & Gentry, of Tyler, for appellant. E. B. Hendricks, Asst. Atty. Gen., for the State.

MORROW, J. This appeal is from a conviction for the offense of murder, with punishment assessed at 19 years' confinement in the state penitentiary.

That appellant killed the deceased was a conceded fact, and his excuse was self-defense. This issue as well as manslaughter and provoking the difficulty were submitted to the jury. Appellant's wife was an eyewitness, and testified to facts tending to show that the deceased was the aggressor, or at least at the time of the homicide the deceased was attacking appellant with a knife with the declaration that he intended to kill him. On cross-examination it appeared that the appellant's wife had remained in Lindale, where the homicide took place, some little time, about a half hour, after the homicide, and then started for her home, four miles distant, and traveled in a wagon with her son, and while so traveling she met Isom Vickery and his wife traveling toward Lindale. The state's counsel asked her if on this occasion when her wagon was passing the vehicle in which Isom Vickery was traveling the latter did not say to her, "Who killed him?" and if she did not reply, saying: "Ira killed your papa because he sued him; I tried to keep him from it, but I couldn't do it." Objection was made to this testimony on the ground that it was not proper cross-examination of the wife, not germane to the direct examination, and called for an opinion of the witness. The objection was overruled, and, Mrs. McDougal having denied the conversation, the state's counsel proved by Isom Vickery and by Mrs. Isom Vickery that the conversation named did occur. This was

objected to as hearsay and as undertaking to prove an opinion and conclusion and as being an inquiry not germane to the direct examination, which objections were overruled, and exception duly reserved.

We do not think that this expression comes within the rule stated in those cases in which it has been held that expressions constituting a shorthand rendition of the facts are admissible, though they bear the appearance of a mere opinion. These cases are cited in Branch's Ann. P. C. p. 1036, but they all recognize the law to be that, where the statement is a mere opinion, even though in a dying declaration, it cannot be admitted in evidence. This is illustrated in Manley's Case, 62 Tex. Cr. R. 392, 137 S. W. 1137. The dying declaration in that case contained the following:

"I was stabbed by one of the soldiers at the fair grounds to-day, and without any word or act of my own that could be regarded as hostile or a provocation."

The court held that the words "that could be regarded as hostile or a provocation" were the opinion or conclusion of the dying man and inadmissible.

In Sorrell's Case, 74 Tex. Cr. R. 505, 169 S. W. 303, the dying declaration contained the words:

"He was shot down like John Ross."

This was declared objectionable because an opinion. The same principle was adhered to in Drake v. State, 65 Tex. Cr. R. 282, 143 S. W. 1157, where the quotation from the dying declaration was that a coward shot him.

In Bateson's Case, 46 Tex. Cr. R. 35, 80 S. W. 88, the dying declaration contained the words:

"They murdered me without cause."

This court held that this statement should have been excluded. The rule is stated in Medina v. State, 43 Tex. Cr. R. 52, 63 S. W. 332, as follows:

"A dying declaration is admissible to show all the facts immediately connected with the homicide to which a witness, were he present, could testify. This would exclude narratives of past transactions and opinions or mere conclusions of the declarant"—citing Roberts v. State, 5 Tex. App. 141; Warren v. State, 9 Tex. App. 619, 35 Am. Rep. 745; 1. Greenl. Ev. § 159; Boyle v. State, 105 Ind. 469, 5 N. E. 203, 55 Am. Rep. 218; People v. Abbott, 4 Pac. 769.[1]

In the Williams Case, 40 Tex. Cr. R. 570, 51 S. W. 226, the dying declaration said:

"When they came into the office I treated them perfectly gentlemanly. They added insult after insult."

The admission of this was held error.

The fact that, where the defendant uses his wife as a witness, the state may conduct a cross-examination germane to the direct examination is not in question. That is settled by the decisions of this state. Branch's

---

[1] Reported in full in the Pac. Reporter; reported as a memorandum decision without opinion in 66 Cal. xviii.

Ann. P. C. § 152, p. 86. From the same author (page 87) we quote the limitation or qualification upon this rule:

"It is error to permit the state to go into new matter on cross-examination of the wife of defendant either for the purpose of impeachment or to draw out circumstances or statements adverse to defendant. Cross-examination is not a device by which the state is entitled to lay predicates as to matters about which the wife of defendant could not be cross-examined or contradicted, or to get before the jury her opinions of defendant's guilt, or her apprehensions of danger, or her hearsay statements as to new matter. [Citing cases.]

"If the state goes into new matter· on cross-examination, the witness becomes, for the time being, a state witness. The state is not entitled on cross-examination of the wife of the defendant to go into new matter, and thereby make the wife of defendant a witness for the state against her husband. The wife of the defendant may be cross-examined by the state only as to such matters as naturally spring out of and appertain to her testimony given on her direct examination. [Citing cases.]"

The subject here emphasized is that the opinion as to the guilt or innocence of a defendant on trial or to the cause of the homicide is not admissible in evidence. In Marsh's Case, 54 Tex. Cr. R. 148, 112 S. W. 323, the wife of the appellant while on the stand as a witness for him was on cross-examination asked by the prosecution if she had not said to Will Brown on an occasion named that it was nothing in the world that caused the trouble except a foolish remark of Kathleen Adams. Upon her denying this statement, Will Brown was put upon the stand for the state, and testified that she made it. His testimony was limited in the court's charge to impeaching purposes. Judge Ramsey, delivering the unanimous opinion of the court, held this proceeding error. We quote from him as follows:

"It formed no part of the transaction or the conversation or matter inquired of from Mrs. Marsh on her original examination. It wholly related to another transaction subsequent to the killing, and was not receivable either for the purpose of impeachment or as a circumstance adverse to appellant. Again, we think the testimony was objectionable in that it called for the opinion of the witness as to the killing. For full discussion of this matter see Richards v. State, 53 Tex. Cr. R. 400, 110 S. W. 432; Jones v. State, 38 Tex. Cr. R. 87, 40 S. W. 807; Id., 41 S. W. 638, 70 Am. St. Rep. 719; Messer v. State, 43 Tex. Cr. R. 97, 63 S. W. 643; Washington v. State, 17 Tex. App. 197; Hoover v. State, 35 Tex. Cr. R. 342, 33 S. W. 337; Gaines v. State, 38 Tex. Cr. R. 202, 42 S. W. 385; Creamer v. State, 34 Tex. 173; Greenwood v. State, 35 Tex. 587; Merritt v. State, 39 Tex. Cr. R. 70, 45 S. W. 21; Johnson v. State, 28 Tex. App. 17, 11 S. W. 667; Hamilton v. State, 36 Tex. Cr. R. 372, 37 S. W. 431; Owen v. State, 7 Tex. App. 329; Red v. State, 39 Tex. Cr. R. 414 [46 S. W. 408]; Bluman v. State, 33 Tex. Cr. R. 43, 21 S. W. 1027 [26 S. W. 75]."

In Taylor's Case, 74 Tex. Cr. R.·3, 167 S. W. 61, the majority of the court expressed the opinion that the Marsh Case, supra, was not sound, and that it should be overruled so far as it was in conflict with the Taylor Case, supra, and the decisions there cited. The de-

cisions cited are those which establish the rule that a wife may be cross-examined on matters brought out on her direct examination. In the Taylor Case it was not contended that the testimony of the wife constituted her opinion, but the difference between the majority of this court in writing that opinion and Judge Ramsey in writing the opinion in the Marsh Case, supra, involved the extent to which cross-examination of the wife might go. In substance, as we understand it, the correctness of the rule as · quoted from Branch's Ann. P. C. above was not involved, but its application only. We therefore assume that that part of the Marsh Case in which Judge Ramsey holds that the wife's opinion as to the cause of the homicide is not admissible, is not in conflict either with the Taylor Case or the authorities therein cited. In Drake's Case, 29 Tex. App. 276, 15 S. W. 730, this court, in an opinion by Judge Willson, on rehearing, disposed of substantially the same character of testimony in the following language:

"It did not involve facts in evidence, but merely the conclusion of the witness. It was not the statement of a fact, but of a conclusion—a mere opinion or belief of the witness. It was therefore a statement collateral to the issue as we understand the authorities upon this subject. In addition to the citations of authorities in our former opinion bearing upon this question, we refer to Wharton's Criminal Evidence, § 482, 1 Wharton on Evidence, § 551, and 1 Greenleaf's Evidence, § 449. As to the second proposition, we held, and still hold, that the statement inquired about involved the opinion merely of the witness. A statement of opinion merely cannot be used to impeach a witness, except when opinion is an issue or where the opinion stated goes to show bias of the witness. Whart. Crim. Ev. § 482; 1 Greenl. Ev. § 449; Holmes v. Anderson, 18 Barb. [N. Y.] 420."

In Watson's Case, 50 Tex. Cr. R. 171, 95 S. W. 115, a witness who had testified to facts showing self-defense was impeached by showing that he had stated that defendant shot deceased for nothing. This was held error on the ground that it was proving the opinion of the witness. In Woodward's Case, 50 Tex. Cr. R. 294, 97 S. W. 502, the same principle is adhered to. Likewise in Hobbs' Case, 53 Tex. Cr. R. 71, 112 S. W. 316.

[1] The cases cited by the Assistant Attorney General are not in conflict with the case of Marsh v. State, supra, in so far as it declares the opinion of the witness inadmissible and declares the statement quoted in that case to have been an opinion. The statement imputed to Mrs. McDougal to the effect that her husband killed deceased "because he sued him" does not purport to relate any fact, but only a conclusion supposed to have been drawn by her from the facts obtained by her from an undisclosed source. It touched a vital issue—the cause of the homicide. That appellant killed the deceased was not in question. The reason for it was the subject of the trial. The evidence complained of should have been excluded.·

Appellant asserts that there was error in the refusal of the trial court to grant a new trial on the ground that the jury after its retirement discussed and used against him the fact that he had previously been convicted in this case and his punishment assessed at 20 years' confinement in the penitentiary. It appears that in developing the case reference was made to the fact that the defendant had been previously tried, but there was no reference or evidence showing how it resulted. On the first night that the jury were out they were of the opinion that appellant was guilty of some degree of homicide, and they balloted a number of times upon the amount of his punishment. Their views varied, some insisting that the offense was manslaughter and the punishment should be 2 years, others insisted upon 5 and others upon 10 years, and others for various numbers of years going up to 99. They reached that night a stage in which ten voted for 15 years as the punishment and two against it. There is evidence that one of the men who was for the highest punishment began the discussion or statements relating to the former conviction. One of the jurors testified as follows:

"Just before the 10 and 15 year men agreed on 19 years it seemed that we had come to a halt, when the other two would not come to them, and we quit, and several went into another room and went to sleep, and a little after 3 o'clock one of the jurors roused up the balance and wanted an agreement."

As to its terms he replied:

"Well, in the former trial the jury gave McDougal 20 years, and I think that the anguish that he has undergone for the past year, we will just disregard that year and give him 19 years."

The juror testifying said that he told him he did not think they had a right to consider the former sentence, but finally told him that they would get the men together, and they did get the other eight, including himself, and arrived at a verdict of 19 years. The jurors generally stated that they were not influenced by the fact brought to their knowledge of the prior conviction or the discussion of it.

Article 837, C. C. P., prescribes that:

"New trials in cases of felony shall be granted * * * where the jury, after having retired to deliberate upon a case, have received other testimony."

In Mitchell's Case, 36 Tex. Cr. R. 318, 33 S. W. 367, 36 S. W. 464, Hurt, Presiding Judge, delivering the opinion of this court construing this statute, says:

"It would appear from this that, if the jury received other testimony after having retired to deliberate upon a case, a new trial is mandatory. Certainly it would be so where the testimony is of a material character, and it makes no difference whether the jury received this testimony from one of their number, or from others."

In Lankster's Case, 43 Tex. Cr. R. 298, 65 S. W. 373, Henderson, J., delivering the opinion of this court reversing the judgment assessing the penalty at 7 years' confinement in the penitentiary because during their deliberations one of the jurors mentioned in the presence of his fellows the fact that appellant had been previously convicted in the same case and his punishment fixed at 25 years in the penitentiary on one trial and 15 years on another, said:

"The question thus presents itself: Was this such misconduct on the part of the jury as to require a reversal of this case? We are aware there are some cases wherein we have stated that the mere allusion to the failure of defendant to testify is not a ground for reversal. But in those cases it will be found that state's counsel was provoked in what he stated by remarks of defendant's counsel. Campbell v. State, 35 Tex. Cr. R. 161 [32 S. W. 774]; Brantly v. State, 42 Tex. Cr. R. 293 [59 S. W. 892]. In Morrison's Case, 39 Tex. Cr. R. 519 [47 S. W. 369], which has been referred to, we do not understand that any question as to the misconduct of the jury was before the court. The case was reversed on other grounds, and it was held in that case that the affidavit seeking to impeach the verdict of the jury for misconduct was too general. * * * The former convictions were alluded to and discussed. Obviously, as men generally act from motive, this matter was discussed by some one for a purpose; and the suggestion that former juries had not only found appellant guilty, but had fixed a heavy punishment to his offense, would have more or less moral weight with the jury. It was calculated to strengthen the weak-kneed, and to increase the ardor of those who were already in favor of the greatest number of years. But we do not believe, in a matter of this sort, we are authorized to speculate as to possible injury that may have accrued to appellant. The jury were guilty of misconduct in referring to the former convictions, and the bare fact that this misconduct was of a character calculated to injuriously affect him is enough."

In Tutt's Case, 49 Tex. Cr. R. 202, 91 S. W. 584, Morawitz's Case, 49 Tex. Cr. R. 366, 91 S. W. 227, Hardiman's Case, 53 S. W. 121, Horn's Case, 50 Tex. Cr. R. 404, 97 S. W. 822, Clements' Case, 69 Tex. Cr. R. 369, 153 S. W. 1137, and Blocker's Case, 61 S. W. 391, there were reversals because the jury after retirement and before verdict had received from one of their number knowledge of the prior conviction of the defendant or his codefendant, each of them holding that such knowledge was receiving evidence within the terms of the statute, and that harmful evidence was received, rendering it imperative that a new trial be granted unless the absence of injury was shown. In most of these cases the punishment assessed upon the previous trial was greater than that in the case passed upon, and in all of them there was testimony by the jurors to the effect that they were not influenced by the knowledge thus received.

Touching this character of testimony, we quote from the cases of Lankster v. State, supra, and Mitchell v. State, supra, as follows:

"The jury say that this discussion in no wise influenced them in arriving at their verdict. The affidavits of jurors who are guilty of misconduct to the effect that they were not prejudiced by what they did is of little weight. As was said in Mitchell's Case, 36 Tex. Cr. R. 318 [33 S. W. 367, 36 S. W. 463]: 'Such an affidavit

is to be expected from jurors seeking to justify themselves for their own misconduct, and to escape a responsibility imposed upon them by their oaths, which an admission that they were otherwise influenced would entail.' "

There are cases passing upon article 837, subd. 7, holding that a mere incidental mention of the former conviction will not necessarily result in reversal. Among them are Baines' Case, 43 Tex. Cr. R. 490, 66 S. W. 847, where the complaint relating to a reference by the state's attorney to the former conviction, the court held there was no such reference; Salazar's Case, 55 Tex. Cr. R. 313, 116 S. W. 819, where there was no discussion of the former conviction, but a bare mention of it only; Coffman's Case, 73 Tex. Cr. R. 309, 165 S. W. 939, where a witness during the trial volunteered a statement of the previous conviction, and the court promptly reprimanded the witness and withdrew the matter from the jury, and where it appeared that there was no discussion of the previous conviction by the jury, and it further appeared that the jury knew of it in advance; Smith's Case, 52 Tex. Cr. R. 344, 106 S. W. 1161, 15 Ann. Cas. 357, in which there was casual, incidental allusion to the former conviction, but no use of it, the court stating the true rule to be:

"That a verdict ought not to be set aside for every incidental and casual mention of a former * * * conviction, * * * unless the court may fairly and reasonably see in the light of all the circumstances that such reference or discussion did or might have prejudiced the appellant's case."

[2] Arnwine's Case, 54 Tex. Cr. R. 215, 114 S. W. 796, was one in which the jury knew of the prior conviction before it was mentioned in the jury room. It was discussed, however, and there was a dissenting opinion holding that a reversal was required, and with this opinion we agree. An examination of each of the cases in which there has been an affirmance will disclose facts different from those involved in the present case. In each of them, except the Arnwine Case, supra, the evidence demonstrated an absence of the injury.

The statute has also been given a mandatory effect in its application to the receipt of harmful testimony other than that of prior conviction. Thus in the McWilliams Case, 32 Tex. Cr. R. 269, 22 S. W. 970, Hurt, Presiding Judge, writing the opinion reversing for the receipt of such testimony, says:

"If the jury, after having retired to deliberate upon the case, shall receive other testimony, a new trial shall be granted; and, the additional testimony being against the accused, we will not stop to inquire as to its effect upon the jury or jurors."

And in Tate's Case, 38 Tex. Cr. R. 261, 42 S. W. 595, reversing on a similar ground, the court says:

"We are left in the dark as to the extent of the discussion of this matter in the jury room, nor are we informed that it had any particular effect as against the defendant; but we are constrained to believe that, as the matter appears from the record in this case, it must have been used to his detriment."

The court further says that to permit the testimony given in the jury room would be to deprive the defendant of the right of cross-examination and violative of the fundamental principles underlying the right of trial by jury. Other cases in which there have been reversals upon the ground of a reference to or proof of the prior conviction are Sorrell v. State, 74 Tex. Cr. R. 505, 169 S. W. 299; Eads v. State, 74 Tex. Cr. R. 628, 170 S. W. 145; Kirksey v. State, 58 Tex. Cr. R. 188, 125 S. W. 15; May v. State, 59 Tex. Cr. R. 141, 127 S. W. 832; Clements' Case, 69 Tex. Cr. R. 369, 153 S. W. 1137; Hughes v. State, 44 Tex. Cr. R. 296, 70 S. W. 746.

Another statute (article 843, C. C. P.) provides that former convictions shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument. The violation of this statute has been uniformly held reversible error. Davis v. State, 54 Tex. Cr. R. 236, 114 S. W. 366; May v. State, 59 Tex. Cr. R. 141, 127 S. W. 832; Wyatt v. State, 58 Tex. Cr. R. 115, 124 S. W. 929, 137 Am. St. Rep. 926. In the analogous case of McCampbell v. State, 37 Tex. Cr. R. 611, 40 S. W. 497, relating to the violation of the statute prohibiting the separation of the jury without the consent of the court, there was held a presumption of error, the court saying:

"The accused is not alone interested in this matter. The state has an interest in the life and liberty of the citizen. The state has an interest in the purity of the trial by jury. * * * A separation of the jury may result in great injustice to the state, as well as the accused, not only in the particular case, but as establishing a bad precedent."

And in Early's Case, 51 Tex. Cr. R. 391, 103 S. W. 868, 123 Am. St. Rep. 889, it was held that, where a juror talked over the telephone, violative of a statute which prohibited jurors from communicating with other persons without the consent of the court, the presumption of injury would be indulged, at least to the degree that the state would have the burden of showing that there was no injury. Many reversals have been ordered by reason of the failure to observe the rule declaring that defendant's failure to testify shall not be used against him and for the violation of other statutory regulations.

The statute the violation of which is complained of in this case is one which expressly directs that a new trial shall be granted where the jury after retirement receives other testimony. The Constitution guarantees a public trial by an impartial jury and that the accused shall be confronted with the witnesses against him; and one of the provisions of the Code is that one is disqualified as a juror who is a witness in the case. A juror who knows damaging facts against the appellant should disclose them and disqualify himself upon the ground that he is a witness, and failing to do so and disclosing them to

the jury after the retirement, can hardly be classed as an impartial juror. The testimony thus received by the jury in its retirement is contrary to the constitutional requirement giving the defendant the right to be confronted with the witnesses against him. Testimony thus received is under circumstances denying the right of cross-examination declared by our courts as an efficacious test for the discovery of truth. Bell v. State, 2 Tex. App. 220, 28 Am. Rep. 429. The statutes mentioned were passed to preserve to parties accused of crime the constitutional rights referred to and to protect the state against a corrupt verdict. The inhibition against the receipt by the jury of evidence after its retirement is against legal evidence as well as illegal evidence, but the facts under discussion here relate to illegal evidence only. If on the trial of the case the state had proved over the objection of appellant the prior conviction, it would have given its sanction to the introduction of the damaging fact which was not admissible. Article 843, C. C. P.; May v. State, 59 Tex. Cr. R. 141, 127 S. W. 832. If such evidence were introduced and its admission brought before this court for review, it would, as stated in the cases mentioned above, be reversible error. Under such circumstances the court would not call the jurors to inquire whether they were influenced by the introduction of this illegal evidence, but the fact that they were influenced by it would be presumed. It seems illogical to place upon the appellant a greater burden where the illegal evidence is received in his absence, in opposition to a constitutional right and statutory provision, than would be imposed upon him if the evidence had been introduced in his presence on the trial. Clements v. State, 69 Tex. Cr. R. 369, 153 S. W. 1137. It is therefore thought that the conclusion reached by this court as recorded in Lankster's Case, 43 Tex. Cr. R. 298, 65 S. W. 373, supra, and Mitchell's Case, 36 Tex. Cr. R. 278, 33 S. W. 367, 36 S. W. 456, supra, is correct. These cases bear evidence of careful consideration of the questions involved. They are characterized by no loose expressions, but with cogency of reasoning and clearness of statement declare that, when a jury after it retires to consider its verdict receives other evidence damaging to defendant, the presumption of injury obtains, to rebut which the state must do more than to elicit the conclusions of the jurors that they were not influenced. These cases have been followed. Ysaguirre v. State, 42 Tex. Cr. R. 253, 58 S. W. 1005; Casey v. State, 51 Tex. Cr. R. 433, 102 S. W. 725; Horn v. State, 50 Tex. Cr. R. 404, 97 S. W. 824; Hughes v. State, 44 Tex. Cr. R. 296, 70 S. W. 746; Clements v. State, 69 Tex. Cr. R. 369, 153 S. W. 1137.

In our judgment, the facts disclosed by the bill of exceptions show that the jury after its retirement to deliberate upon the case not only received other testimony, but received illegal testimony damaging to the appellant, and, further, that the former convictions of appellant were alluded to and used against him in a manner inhibited by article 843, C. C. P. The evidence, in our opinion, does not show that appellant was not injured by these proceedings. In obedience to the command of article 837, C. C. P., appellant's motion for a new trial should have been granted.

Because of the errors pointed out, the judgment of the lower court is reversed, and the cause remanded.

PRENDERGAST, J., dissents.

DAVIDSON, P. J. (concurring). Concurring with Judge MORROW in the reversal of this judgment, I desire to make a few general observations with reference to the introduction of the statements of appellant's wife. The question presented is this: Was her statement one of fact or one of conclusion or opinion based on some known facts, or formed and reached without facts? If it was an opinion from either viewpoint, it was clearly inadmissible. If her statement was the result or conclusion of statements made to her by her husband, those statements, if admissible, should be produced and not the conclusion from the statements. This, of course, would result in excluding a conclusion or opinion by the witness from such facts, or want of facts. The statement of these propositions ought to be self-evident; that is, if the facts exist, being permissible, they should be introduced, and not the opinion formed from such facts, or, if there be no facts, then the conclusion would not only be an opinion, but would be hearsay, and opinion without foundation. If there are no facts upon which to predicate the opinion, it is equally self-evident that the opinion could not be introducible. The statement imputed to Mrs. McDougal excludes every idea except that of conclusion or opinion. What operated upon her mind to form the conclusion was not stated. Her statement or conclusion was that appellant killed deceased because deceased had sued him. There must have been some fact inducing such conclusion. What was it? Whatever it was was not given nor stated by her, nor was she asked about it. The witness only stated her conclusion. The jury was entitled to know the facts, if any existed, and not the opinion of a witness. If her conclusion was reached by any communication made by her husband, this would come within the interdiction of article 794, C. C. P., prohibiting the use of confidential communications. She could not be even cross-examined about such confidential communications. This would lead necessarily to the proposition that she could not be impeached so far as this phase of the matter is concerned. Confidential communications are placed by our statute as be-

ing within the Holy of Holies of the law and the family circle, to be rigidly upheld. The family is the basic foundation of our civilization and government, and no invasion should be permitted as to this sacredness. Any statement made by the husband to the wife cannot be used under the terms of article 795, C. C. P., if incriminating; for this would be making her a witness as to such confidential matters and statements. The question of the testimony of other witnesses as to conversations between husband and wife heard by them is not here discussed, nor is it involved so far as the record shows. The wife is not to be classed as a third party. If her statement was but an opinion or conclusion, it was error to admit the statement. This was conceded and so held in the opinion on the former appeal as found in 185 S. W. 15. But that opinion upheld the ruling of the trial court upon the theory that it was legitimate cross-examination of the wife. In the light of further reflection I am persuaded the former opinion on this question was erroneous, ought not to have been so rendered, and should not now be upheld as the law under the facts of this case. The relation of husband and wife existed. She testified at the instance of her husband to facts and circumstances attending the difficulty which ended in the killing. After the killing she was asked but denied making the statement that her husband killed deceased because deceased had sued her husband. This was not germane to her testimony given as to the incidents of the fatal difficulty, but, if it was and was formed on confidential statements to her, still the statute would interdict the use of such statements; much less could her opinion be given. The state could not use such evidence as incriminating. If her husband killed on account of the lawsuit, it would tend to show on his part a motive, and therefore would or might impair his defensive theories of the killing. She, as before stated, was not asked about any facts upon which her conclusion was reached or her opinion formed. What these facts were, if any, was not disclosed by the questions or the answers. If her husband made statements, they could not be used, and therefore for much stronger reasons her opinion or conclusion could not be introduced in evidence: First, because they were confidential communications; second, if she obtained the information from others, her conclusion would be an opinion formed upon hearsay, and therefore inadmissible; third, being incriminating, they would be interdicted and inadmissible because coming from the wife; fourth, if legitimate, the facts should be given, and not her conclusion resulting from the facts, nor her opinion stated from such facts, or information from others; fifth, the propounded question itself assumes as a predicate facts which are not stated and about which inquiry was not made; sixth, the impeaching answer verified

the fact that it was but her conclusion or opinion predicated either upon known and undeveloped facts, or upon hearsay statements, even if she made the statement imputed to her; seventh, realizing the solemnity of adjudication of questions, I further realize the more important fact that it is far better to overrule erroneous opinions than to let them stand as a menace to the law and to our statutes and jurisprudence. Such opinions are always dangerous when they lead to erroneous punishment, and this from any viewpoint, but when they lead to substituting opinions of witnesses for the facts and takes away from the jury their province to decide upon the facts, it becomes a menace to the liberty of our people, but, when this uncovers the relation of husband and wife and breaks down that sacred bulwark, it becomes subversive of the foundation stone of society as well as the law and substitutes opinion of witnesses for facts and jury trials. Even where there is a doubt of facts, the doubt should be resolved in favor of the sanctity of the home inhering in the marital relations. Doubt of fact or law favors the presumption of innocence, and this by statute and the fundamental principles pertaining to criminal trials. This is true in regard to the proposition generally stated, but when it goes further and undertakes to invade the home circle and tear down its inherent sanctity, then it becomes more than serious.

I also wish to concur in the reversal of this judgment on account of the misconduct of the jury as shown by the motion for new trial and evidence in support of it, and stated by Judge MORROW in his opinion. In view of the fact he has so fully and conclusively reviewed the question, I deem it unnecessary to add anything to what he has said, but simply add this by way of concurrence. He has reached the correct conclusion of the law applicable to the state of case presented by the record, and has rightly decided the case on that question. It is unnecessary for me to say more than the above or write further, but I cite the following as some of the cases fully sustaining Judge Morrow's opinion: Lankster v. State, 43 Tex. Cr. R. 298, 65 S. W. 373, Hughes v. State, 43 Tex. Cr. R. 511, 67 S. W. 104, and citation of authorities in both cases; Hughes v. State, 44 Tex. Cr. R. 296, 70 S. W. 746; Baines v. State, 43 Tex. Cr. R. 490, at page 498, 66 S. W. 847; Tutt v. State, 49 Tex. Cr. R. 202, 91 S. W. 584; Clements v. State, 69 Tex. Cr. R. 369, 153 S. W. 1137.

PRENDERGAST, J. (dissenting). On the first appeal of this case, reported in 185 S. W. 15, precisely the same question was then raised that is now raised on this appeal as to the impeachment of Mrs. McDougal, appellant's wife. The state in cross-examination of her, for the purpose of laying a predicate to impeach her, was properly permitted to ask her

if when she met Isom Vickery and his wife (deceased's son and his wife), and he asked, "Who killed Papa?" if she did not reply, "Ira killed your papa; he killed him because he sued him, and I done everything I could to keep him from doing it;" and when she denied making such reply, the state was then properly permitted to impeach her by Isom Vickery and his wife, in which they testified that Mrs. McDougal was asked said question and made said reply. All this was for the purpose of laying a predicate to impeach and impeaching her by the testimony of Isom Vickery and his wife. As stated, this identical question was the one decided in this case by this court on the first appeal. It was fully and thoroughly considered both when the original opinion was handed down and again on appellant's motion for a rehearing by this full court as then constituted, and, without any difference of opinion or any dissent from any member, the said proceedings were held legal. I have no doubt of the correctness of that holding, and, so far as I am concerned, adhere to it and reaffirm it.

Said statement by her to Isom Vickery and his wife, as they swore, was, at most, but a shorthand rendering of the facts, which heretofore has always been held admissible. 1 Branch's Ann. P. C: § 132; Miller v. State, 18 Tex. App. 232; Powers v. State, 23 Tex. App. 64, 5 S. W. 153; Fulcher v. State, 28 Tex. App. 471, 13 S. W. 750; Meyers v. State, 37 Tex. Cr. R. 210, 39 S. W. 111; Williams v. State, 60 Tex. Cr. R. 453, 132 S. W. 345.

Again, this court has heretofore held that a dying statement by a deceased, such as that he was "killed for nothing" or "shot without cause," and other like statements, was a shorthand rendering of the facts, and not a mere opinion, and admissible. Roberts v. State, 5 Tex. App. 150; Pierson v. State, 21 Tex. App. 59, 17 S. W. 468; Sims v. State, 36 Tex. Cr. R. 165, 36 S. W. 256; Connell v. State, 46 Tex. Cr. R. 261, 81 S. W. 746; Lockhart v. State, 53 Tex. Cr. R. 593, 111 S. W. 1024; Craft v. State, 57 Tex. Cr. R. 261, 122 S. W. 547; Gaines v. State, 58 Tex. Cr. R. 631, 127 S. W. 181; Corbitt v. State, 72 Tex. Cr. R. 396, 163 S. W. 436; Clark v. State, 56 Tex. Cr. R. 296, 120 S. W. 179.

If the statement is a shorthand rendering of the facts as shown by the statement, or the context, it has heretofore been held admissible, though apparently an opinion. Sims v. State, supra; Connell v. State, supra; Lockhart v. State, supra; Craft v. State, supra; Gaines v. State, supra; Lane v. State, 59 Tex. Cr. R. 603, 129 S. W. 353; 2 Branch's Ann. P. C. p. 1036.

I have more than once read and studied the testimony heard by the trial judge in the attack of appellant on the verdict of the jury. I am thoroughly convinced that the

trial judge was fully justified in overruling the motion for new trial on that ground. I think a careful study of all of that testimony should convince any one that the trial judge correctly overruled the motion on that ground. It is useless for me to detail that evidence. There may be culled, as has been done herein, some expressions in the testimony of some of the jurors which, if taken alone, might have justified the trial judge to have set aside the verdict on that ground, but that is not the criterion. All the testimony of all of the jurors should be considered; and when that is done, as was done by the trial judge in this case, I think his action was correct. And his action is supported by the former decisions of this court. I merely cite some of the cases without commenting upon them. Coffman v. State, 73 Tex. Cr. R. 308, 165 S. W. 939; Morrison v. State, 39 Tex. Cr. R. 519, 47 S. W. 369; Arnwine v. State, 54 Tex. Cr. R. 213, 114 S. W. 796; Smith v. State, 52 Tex. Cr. R. 527, 107 S. W. 844; Baines v. State, 43 Tex. Cr. R. 490, 66 S. W. 847; Salazar v. State, 55 Tex. Cr. R. 313, 116 S. W. 819; Lamb v. State, 75 Tex. Cr. R. 78, 169 S. W. 1158.

The judgment herein should be affirmed, not reversed. I respectfully dissent.